## A96A2512. SMITH v. MITCHELL CONSTRUCTION COMPANY et al.

(481 SE2d 558)

JOHNSON, Judge.

Leonard Smith filed this suit in Fulton State Court against Mitchell Construction Company, David Rutherford, Kent Smith, Robert Fleming, and George Wenick, alleging they improperly caused him to be found in contempt of DeKalb Superior Court and arrested, in connection with their attempt to collect a debt. Smith[1] claims the arrest occurred while he had a bankruptcy petition pending, and violated the automatic stay provision of the Bankruptcy Code. The trial court granted summary judgment to the defendants. Its written order contains no findings of fact or conclusions of law, but the judge announced from the bench that he found Smith's action preempted by federal law and barred by res judicata. Smith, who was represented by counsel below, appeals pro se. We affirm.

---

[1] References to "Smith" are to plaintiff-appellant Leonard Smith, who apparently is no relation to defendant-appellee Kent Smith.

The original litigation involving these parties was a suit against Smith filed in DeKalb Superior Court by the law firm of Smith & Fleming on behalf of its client, Mitchell Construction. Rutherford, Fleming, Wenick, and Kent Smith are Smith & Fleming partners and associates. They obtained a judgment for Mitchell Construction, then served Smith with post-judgment discovery. Smith did not respond, but filed a bankruptcy petition instead. Because of miscues on both sides, Smith & Fleming did not receive proper notice that Smith had a chapter 7 bankruptcy case pending until after the superior court had granted their motion to have Smith held in contempt for violating the court's order compelling discovery. Smith was incarcerated for about 29 hours.

After his release, Smith moved the bankruptcy court to sanction Mitchell Construction and Rutherford for violating the automatic stay. The bankruptcy court granted the motion, ordering Mitchell Construction and Rutherford to pay $5,000 into the registry of the bankruptcy court. In setting the amount, the bankruptcy judge considered the indignity of Smith's incarceration; the disruption of his business; the possible damage to his reputation; the additional attorney fees he incurred in filing and prosecuting the sanctions motion; and the fact that if Smith or his lawyer had diligently notified Smith & Fleming of the pending bankruptcy, he could have avoided the arrest altogether. Though the bankruptcy court characterized the $5,000 as "sanctions," it ordered that the funds be disbursed to Smith if he ultimately prevailed in a pending adversary proceeding regarding the dischargeability of his debt to Mitchell Construction. If Mitchell Construction prevailed, the $5,000 would be disbursed to it, but would be credited against Smith's debt.

Smith then filed this Fulton State Court action against Mitchell Construction and the Smith & Fleming lawyers, alleging false arrest, negligence, assault, and intentional infliction of emotional distress. The adversary proceeding was still pending in bankruptcy court when the state court granted the defendants' summary judgment motion.

1. Smith contends the trial court erred in finding his action preempted by federal law. At issue is 11 USC § 362 (h): "An individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Whether § 362 (h) preempts state law claims for conduct violating a stay in bankruptcy is a question of first impression in Georgia.

In deciding whether federal law preempts a state law, the court's primary consideration is whether Congress intended to exercise its authority under the Supremacy Clause. See *City of Atlanta v. Watson*, 267 Ga. 185, 192 (3) (475 SE2d 896) (1996). The mere exis-

tence of a detailed regulatory scheme does not alone imply intent to preempt. *English v. Gen. Electric*, 496 U. S. 72, 87 (110 SC 2270, 110 LE2d 65, 80) (1990). However, such intent may be inferred in an area in which federal legislation is especially pervasive or the federal interest is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or because the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." (Citation and punctuation omitted.) *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta*, 458 U. S. 141, 152-153 (102 SC 3014, 73 LE2d 664) (1982). Other "special features" may also warrant preemption. *English*, supra.

Cases in several jurisdictions hold that the Bankruptcy Code preempts state law claims for abusive filings in bankruptcy court. See, e.g., *MSR Exploration, Ltd. v. Meridian Oil*, 74 F3d 910, 912-915 (9th Cir. 1996); *Edmonds v. Lawrence Nat. Bank &c.*, 16 Kan. App. 2d 331 (823 P2d 219) (1991); *Sarno v. Thermen*, 239 Ill. App. 3d 1034 (180 Ill. Dec. 889, 608 NE2d 11) (1993). Whether the Code preempts state law actions for conduct *outside* bankruptcy court that violates the automatic stay, however, has been considered in only two cases cited by the defendants: *Koffman v. Osteoimplant Technology*, 182 B. R. 115 (D.Md. 1995), and *In re Shape, Inc.*, 135 B. R. 707 (D.Me. 1992).

After Shape, Inc. filed a chapter 11 reorganization petition, a creditor with whom it continued to do business raised the prices of goods it sold Shape. Shape brought suit against the creditor in another court, claiming the price increase was a thinly disguised attempt to recover the price of goods Shape had received, but not paid for, before it filed its bankruptcy petition. Shape argued this was both a violation of the automatic stay, compensable under § 362 (h), and an unfair business practice under state law. Id. In holding that the Bankruptcy Code preempted the state law claim, the *Shape* court noted that the debtor did not allege the price increase to be illegal in itself. Rather, it was an allegedly unfair business practice only because it violated the bankruptcy stay. Id. at 708-709. "Since this federal statute is applicable here, and has its own enforcement scheme and separate adjudicative framework, it must supersede any state law remedies." Id. at 708.

Similarly, Smith does not contend that defendants' efforts to collect on a judgment were illegal in themselves. Their illegality arose solely from the fact that Smith had a bankruptcy case pending, which gave rise to the automatic stay. *Shape* is persuasive authority for holding that such bankruptcy-dependent claims should be preempted as coming within the Bankruptcy Code, which "provides a comprehensive scheme reflecting a balance, completeness and struc-

tural integrity that suggests remedial exclusivity." (Citation and punctuation omitted.) Id. at 708.

*Koffman v. Osteoimplant Technology*, supra, employed similar reasoning to reach a similar conclusion. After Osteoimplant Technology, Inc. ("OTI") had been placed in an involuntary chapter 7 bankruptcy, Koffman filed a collection suit against it, violating the stay. Koffman then dismissed the suit and moved the bankruptcy court to enjoin OTI's president from leaving the country, allegedly making bad faith representations about the president's intended conduct. After the chapter 7 petition had been dismissed, OTI sued Koffman, alleging abuse of process and malicious prosecution. (A third cause of action was dismissed for lack of evidence.) Id. at 119-122.

The *Koffman* court reasoned that "the automatic stay is imposed exclusively as a matter of federal bankruptcy law, and the Bankruptcy Code provides a remedy for willful violations of that stay, 11 U.S.C. § 362 (h). State created rights have nothing to do with the application of the automatic stay. Allowing state tort actions based on allegedly bad faith bankruptcy filings or violations of the automatic stay to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme. Because such a result threatens to erode the exclusive federal authority in this area, and because it would threaten the uniformity of federal bankruptcy law, the Court finds that OTI's state tort suits are preempted by the federal Bankruptcy Code." (Citations and punctuation omitted.) Id. at 125.

We find the reasoning of *Shape* and *Koffman* persuasive. As noted in *MSR Exploration*, supra at 913, "Congress has expressed its intent that bankruptcy matters be handled in a federal forum." The need for uniformity in bankruptcy matters was recognized even by the framers of the Constitution, who granted Congress the power to "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States" in Art. I, § 8, cl. 4. See *MSR Exploration*, supra at 914. From this long-recognized need for uniformity; from the comprehensive structure of the current Bankruptcy Code; and from Congress' inclusion in that structure of § 362 (h), which provides a remedy for stay violations, we infer Congress' intent to effectuate two related principles: Creditors should be held to a uniform standard of conduct when dealing with bankruptcy debtors, and the bankruptcy courts are the only institutions capable of fashioning such a uniform standard. These principles dictate our holding: § 362 (h) preempts Smith's state law claims against Mitchell Construction and its lawyers for the actions they took in violation of Smith's bankruptcy stay. The trial court was correct in granting summary judgment to the defendants on that basis.

2. Therefore, we need not decide whether Smith's action is barred by res judicata or precluded for other reasons advanced by the defendants.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 10, 1997 —
RECONSIDERATION DISMISSED MARCH 12, 1997 —

Leonard E. Smith, *pro se.*
*Webb, Carlock, Copeland, Semler & Stair, Kent T. Stair, Craig A. Brookes*, for appellees.