908 A.2d 875

**STONE CRUSHED PARTNERSHIP and Robert James Jackson**

**v.**

**KASSAB ARCHBOLD JACKSON & O'BRIEN and Kassab Archbold & O'Brien, L.L.P. and Edward Kassab, Esquire and William C. Archbold, Jr., Esquire and Joseph Patrick O'Brien, Esquire and Richard A. Stanko, Esquire**

**Appeal of Robert James Jackson.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2004.

Decided Oct. 17, 2006.

Robert J. Dudash, William Joseph Shehwen, III, West Chester, Robert J. Jackson, for Robert James Jackson.

Kathleen M. Carson, Jeffrey B. McCarron, Philadelphia, for Kassab Archbold Jackson & O'Brien, et al.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice NEWMAN.

Stone Crushed Partnership (Stone) and Robert James Jackson (Jackson) (collectively, "Appellant") appeal from an Order of the Superior Court affirming the Order of the Court of Common Pleas of Delaware County (trial court) that dismissed Appellant's action alleging wrongful use of civil proceedings and abuse of process pursuant to Pennsylvania's "Dragonetti" Act, 42 Pa.C.S. §§ 8351–55 (the Act).[1] The trial court and Superior Court based their decisions on the determination that the Bankruptcy Code, 11 U.S.C. §§ 101–1330, preempted any state claim. For the following reasons, we affirm.

---

[1]. In response to frivolous lawsuits, the Pennsylvania Legislature enacted the Act, which punishes both the client and the attorney for bringing a wrongful civil action. The Act establishes liability when "[a] person who takes part in the procurement, initiation or continuation of civil proceedings against another" acts "in a grossly negligent manner or without probable cause and primarily for" an improper purpose. 42 Pa.C.S. § 8351(a)(1). The Act subsumes both the torts of malicious use of process and abuse of process. The Act allows recovery for: (1) the harm from the arrest or interference with the use of land or chattels; (2) the harm from any defamatory statement alleged as a basis for the proceeding; (3) the expense of defending the original action, including attorneys' fees; (4) any pecuniary loss resulting from the original proceedings; (5) any emotional distress that is caused by the wrongful proceeding; and (6) punitive damages. 42 Pa.C.S. § 8353.

## FACTS AND PROCEDURAL HISTORY

On March 1, 1990, Jackson, along with William Archbold, Jr., Esq. (Archbold), and Joseph O'Brien, Esq. (O'Brien), formed, with equal shares, Granite Partners I, Ltd. (Granite), to purchase and maintain real estate. Additionally, Jackson, Edward Kassab, Esq. (Kassab), Archbold, and O'Brien were partners in the law firm Kassab, Archbold, Jackson, and O'Brien (KAJO), in Media, Pennsylvania. Subsequently, Granite entered into an agreement of sale to purchase a 12.7–acre tract of land in Middletown Township, Pa. Granite obtained a loan of $500,000.00 from First Fidelity Bank, N.A. (Fidelity), secured by a mortgage, note, and personal guarantees from the three partners. Granite later defaulted on the loan, and Fidelity confessed judgment in the amounts of $699,636.97 and $652,992.37, against Granite and the three partners, by virtue of their personal guarantees, respectively.

Seeking to avoid foreclosure, Jackson, the only partner who wished to continue the investment, approached Archbold and O'Brien and asked whether they would be willing to contribute funds. Archbold and O'Brien rejected the invitation, and Jackson formed his own partnership, Stone, to purchase the mortgage and note from the lender.[2] Stone, essentially, is Jackson acting in accordance with the protection afforded to a company formed as a limited partnership.

On October 19, 1995, approximately one year after the mortgage and note were assigned to Stone, Granite, at the request of Archbold and O'Brien, filed for Chapter 11 relief pursuant to the Bankruptcy Code. On May 17, 1996, Stone initiated an Adversary Proceeding in Bankruptcy Court against Granite to exempt from discharge the debt of $811,320.30 owed to Stone. R.R. at 49–50. On August 22, 1996, Granite counterclaimed, alleging that Jackson, as a

---

**2.** For clarification, it is important to note that Jackson used a disinterested person, an associate of KAJO, Kevin E. Gibson, Esq. (Gibson), for the purposes of forming Stone; however, Gibson never contributed money nor performed any actions on behalf of Stone. Reproduced Record (R.R.) at 48–49. Gibson did own one percent of the company to effectuate his role as a general partner. *Id.* at 35.

partner in Granite and via his *alter ego* Stone, could not profit at the expense of Archbold and O'Brien, his partners. *Id.* The Bankruptcy Court dismissed the counterclaims of Archbold and O'Brien on November 20, 1997, and granted Stone's Motion for Summary Judgment in the amount of $699,636.67, plus interest at the rate of ten and one-half percent *per annum* plus costs. *In re Granite Partners I, Ltd.,* No. 95–18296 DWS, 1997 Bankr.Lexis 2219 (Bankr.E.D.Pa.).

Archbold and O'Brien appealed and asserted the same claim, namely that Stone is an *alter ego* of Jackson and, contrary to Pennsylvania partnership law, 15 Pa.C.S. § 8334, is making a profit at the expense of his partners in Granite, thereby breaching his fiduciary duty to Granite. On February 20, 1998, the United States District Court for the Eastern District of Pennsylvania affirmed the Bankruptcy Court's denial of the claims of Archbold and O'Brien. R.R. at 20–24. In particular, the District Court found that even if Jackson and Stone were insiders, the agreement between Stone and Granite was legitimate and done with the full knowledge and consent of all parties, notably, all of whom were attorneys intimately involved in the deal. *Id.* at 22–23.

On March 20, 1998, Archbold and O'Brien appealed again, asserting the same claims in the United States Court of Appeals for the Third Circuit. On December 23, 1998, the Third Circuit affirmed the denial of their claims, *In re Granite Partners I, Ltd.,* 173 F.3d 420 (3d Cir.1998), noting that Jackson saved Granite from the risk of a sheriff's sale or the risk that the personal guarantees of Archbold and O'Brien would be used to satisfy a judgment. R.R. at 27. Archbold and O'Brien did not appeal to the United States Supreme Court within ninety days, which rendered the Judgment final on March 24, 1999. U.S. Supreme Court Rule 13.

In 1998, Appellant Jackson filed an entirely separate action against Archbold, O'Brien, and Kassab (collectively, "Appellees") in the Court of Common Pleas of Delaware County (trial court). R.R. at 52. Specifically, Jackson sought payment for his share of a building partnership, KAJO Building Associates, which Jackson, Appellees, and Richard A. Stanko, Esq. (Stan-

ko), owned. *Id.* Appellees counterclaimed and within the New Matter and Counterclaim sections, asserted the same claim that was raised and dismissed in the federal courts. *Id.* at 53. On July 6, 2000, after a bench trial, the trial court ruled in favor of Jackson and awarded him his share of the value of the KAJO Building Associates partnership in the amount of $141,212.38. *Id.* Additionally, the trial court dismissed the counterclaim of Appellees. *Id.* On November 26, 2002, the Superior Court affirmed the judgment. *Jackson v. Kassab, Archbold & O'Brien,* 812 A.2d 1233 (Pa.Super.2002).[3]

■ Before the Superior Court issued its decision regarding the appeal, Appellant filed an action in February of 2000, alleging wrongful use of civil proceedings and abuse of process pursuant to 42 Pa.C.S. § 8351.[4] Appellant Jackson seeks consequential, exemplary, and punitive damages pursuant to the state torts of malicious use of process and abuse of process as codified in the Act. On July 31, 2002, the trial court entered Summary Judgment in favor of Appellees, holding that the Bankruptcy Code preempted Appellant's claim.

3. The four-year gap exists between the original verdict and the determination of the Superior Court because of a derivative matter wherein the Superior Court denied Appellees' appeal as waived for failure to timely file a brief, reconsidered and allowed the appeal as timely, and then heard the case on its merits.

4. It should be noted that the trial court held that Appellant's abuse of process claim could be heard only as based upon the Bankruptcy Court proceedings because the appeal was still pending in Appellant's separate action concerning KAJO Building Associates. R.R. at 125. As a result, the trial court considered only three of the five denials of Appellees' claim concerning Jackson's improperly profiting at the expense of his partners, all of them stemming from the Bankruptcy Court proceeding. Appellees argue that the present suit, involving only the Bankruptcy Court actions, is time-barred because of the two-year statute of limitations to such a claim. *See* 42 Pa.C.S. § 5524. In particular, Appellees allege that the federal proceedings became final as of the December 23, 1998 Order of the Third Circuit. However, the Bankruptcy Court proceedings did not become final until March 24, 1999, 90 days after the December 23, 1998 Order of the Third Circuit. Hence, Appellant had until March 24, 2001, to file the instant suit. As the present claim was brought in February of 2001, the claim based solely on Bankruptcy Court proceedings is not time-barred. Of course, this Opinion is not meant to preclude a claim for abuse of civil proceedings for actions taking place in state court, but only for those actions occurring in the specialized federal bankruptcy courts.

On April 23, 2003, the Superior Court, in an unpublished Opinion, affirmed the Judgment of the trial court. *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 828 A.2d 409 (Pa.Super.2003). The Superior Court relied on *Shiner v. Moriarty*, 706 A.2d 1228 (Pa.Super.), *petition for allowance of appeal denied*, 556 Pa. 711, 729 A.2d 1130 (1998), and *Werner v. Plater–Zyberk*, 799 A.2d 776 (Pa.Super.), *petition for allowance of appeal denied*, 569 Pa. 722, 806 A.2d 862 (2002), in concluding that Appellant was precluded from bringing claims in state court for actions that occurred in Bankruptcy Court.

## DISCUSSION

■ We granted allowance of appeal to determine, as a matter of first impression for this Court, if the Commonwealth will adopt the law established by the Superior Court in *Shiner* or that of the Third Circuit in *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir.2002) (recognizing a split in the Circuit Courts regarding preemption of state remedies by the Bankruptcy Code and noting that in *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir.1988), it "discovered that because of a gap in the text the Code failed to provide a remedy against a creditor that had improperly filed an involuntary petition for bankruptcy against a debtor"). *U.S. Express*, 281 F.3d at 393. Thus, the question we must answer is whether the Bankruptcy Code preempts the entire field, including a state tort claim for abuse of process based upon Bankruptcy Court proceedings.[5]

■ For the reasons that follow, we hold that the Bankruptcy Code preempts a state law claim of abuse of process based upon a frivolous claim filed in Bankruptcy Court proceedings because: (1) Congress evinced an intent to govern the whole field; and (2) Fed.R.Civ.P. 11 (Rule 11),[6] 28 U.S.C.

---

5. On questions of law, our standard of review is *de novo* and our scope of review is plenary. *Straub v. Cherne Industries*, 583 Pa. 608, 880 A.2d 561, 566 n. 7 (2005).

6. Fed.R.Civ.P. 11(c)(2) reads, as follows:

§ 1927,[7] and the Bankruptcy Code potentially provide for the equivalent protection afforded by this Commonwealth to its citizens in a Dragonetti Act claim.

 The Supremacy Clause of the United States Constitution controls federal preemption. U.S. Const. Art. VI, cl. 2;[8] *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *English v. Gen. Elec. Co.,* 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Congress has the undisputed power to preempt state law in areas of federal concern. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Such preemption does not need to be explicit in a statute invalidating a state law. *Int'l Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). If the area in question is

**Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

**(A)** Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

**(B)** Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

7. 28 U.S.C. § 1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

8. U.S. Const. art. VI, cl. 2 reads:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

one of traditional state concern, it should be presumed that Congress did not intend to supersede state authority absent a clear and manifest legislative purpose to the contrary. *Pac. Gas*, 461 U.S. at 206, 103 S.Ct. 1713.

Congress' intent to preempt state law may be express or implied and found in any of three ways:

First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. *Pac. Gas*, 461 U.S. at 204, 103 S.Ct. 1713. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Finally, a state enactment will be preempted where a state law conflicts with a federal law. *Id.* Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654, 664 (2004) (citations modified); *accord English*, 496 U.S. at 78–79, 110 S.Ct. 2270. Presently at issue is the second category, namely, that a finding of preemption is warranted where the federal legislation is "sufficiently comprehensive" to raise the inference that Congress "left no room for supplementary state regulation." *Int'l Paper Co.*, 479 U.S. at 491, 107 S.Ct. 805 (internal quotation marks omitted). However, the mere existence of a detailed and extensive regulatory scheme by itself does not imply an intent to preempt state remedies. *English*, 496 U.S. at 87, 110 S.Ct. 2270.

While there is no doubt that the Bankruptcy Code generally preempts the field of bankruptcy, courts have not uniformly

determined whether the Bankruptcy Code preempts state law concerning a state action for abuse of process or wrongful use of civil procedure.

In the instant matter, the Superior Court relied heavily upon *Shiner* and *Werner,* which may be contrasted with the reasoning and outcome in *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383 (3d Cir.2002), and *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47 (3d Cir.1988). Therefore, closer examination of these cases will shed light on the ultimate reasoning of this Court.

Initially, we note that this Court is, of course, not bound by the holdings of the Superior Court, but, because this is an issue of first impression, we find it useful to address the reasoning in *Werner* and *Shiner.* In *Shiner,* the plaintiffs sought to bring an abuse of process claim for damages resulting from the filing of certain papers in Bankruptcy Court. The plaintiffs alleged that the defendants filed a voluntary petition in bankruptcy on October 14, 1987, in order to trigger an automatic stay of all legal process against them. *Shiner,* 706 A.2d at 1232. The plaintiffs filed a motion seeking relief from the stay, which the United States Bankruptcy Court granted. *Id.* The defendants applied to the Supreme Court for a reinstatement of its previous Order granting a stay pending appeal in the equity action, which was denied. *Id.* The defendants renewed the request for a preliminary injunction and repeated the request for a stay, which the trial court denied. *Id.* The defendants appealed to the Superior Court. In response, the trial judge, in his Pa.R.A.P. 1925(a) statement, opined in full:

> The relief sought herein was denied three times by this judge, once by Judge Wekselman of this court, twice by the Superior Court, twice by the Supreme Court and once by the Bankruptcy Court. Litigation must end at some point. It is suggested that the Superior Court impose counsel fees upon Appellants and/or their counsel.

*Id.* (quoting Opinion of Strassburger, J., at GD 87–13537). The Superior Court in *Shiner* addressed the claim and stated:

[T]he trial court relied upon *Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47 (3d Cir.1988)[,] and *R.L. LaRoche, Inc. v. Barnett Bank of South Florida,* 661 So.2d 855 (Fla.Dist.Ct.App.1995)[,] for the proposition that a state court claim premised on actions taken before a bankruptcy court can be maintained. These cases stand in stark contrast to the preponderance of federal and state decisions. *See,* e.g. *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir.1996); *Gonzales v. Parks,* 830 F.2d 1033 (9th Cir.1987); *Raymark Industries, Inc. v. Baron,* No. 96–7625, 1997 WL 359333, 1997 U.S. Dist. Lexis 8871 (E.D.Pa. June 23, 1997); *Koffman v. Osteoimplant Technology, Inc.,* 182 B.R. 115 (D.Md.1995); *Mason v. Smith,* 140 N.H. 696, 672 A.2d 705 (1996); *Sarno v. Thermen,* 239 Ill.App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11 (1992); *Idell v. Goodman,* 224 Cal.App.3d 262, 273 Cal.Rptr. 605 (1990). Further, the trial court's application of *Paradise Hotel, supra,* to this pre-emption issue is not consistent with the interpretation of at least one district court within the Third Circuit. *Raymark, supra,* at *34–36 (finding *Paradise Hotel* "inapplicable" to issue of pre-emption of state tort claim based on bankruptcy filings and "explicitly restricted to its facts").

*Shiner,* 706 A.2d at 1238 (spacing modified). The Superior Court further concluded, "the Bankruptcy Code permits no state law remedies for abuse of its provisions." *Id.*

*Shiner* relied on a string of cases from other jurisdictions, one of which was *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir.1996). In *MSR Exploration,* the Ninth Circuit addressed a situation in which a Chapter 11 debtor brought an action for malicious prosecution against a creditor claiming that the creditor maliciously pursued frivolous claims in bankruptcy proceedings. The Ninth Circuit stated that through the complexity and detailed provisions of the Bankruptcy Code, Congress has clearly demonstrated an intent to control the entire field. *Id.* at 914.[9]

9. The *MSR Exploration* court did note that the Bankruptcy Code does take some cues from state law. The court stated that, "[w]hile it is true that bankruptcy law makes reference to state law at many points, the

Additionally, the Bankruptcy Court in *Koffman* reasoned that:

> Parties could be deterred from exercising their rights in bankruptcy if, by filing a bankruptcy petition, they risk being faced with a state court lawsuit and liability for substantial damages. *Gonzales,* 830 F.2d at 1036. "It is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." *Id. See also Taylor* [*v. Freeland & Kronz*], 503 U.S. at 643–46, 112 S.Ct. at 1648–49[, 118 L.Ed.2d 280 (1992)] (To the extent that existing federal remedies do not deter bad-faith behavior in bankruptcy proceedings, "*Congress* may enact comparable provisions to address the difficulties") (emphasis added).

*Koffman,* 182 B.R. at 126. The Bankruptcy Court noted that the jurisdictions that have held that federal law preempts the state claims of abuse of process are concerned specifically that allowing a state lawsuit to advance would deter a party from exercising its rights in bankruptcy for fear of a state civil lawsuit. *Id.*

The Superior Court in the case *sub judice* noted *Werner,* which stated that the, "Bankruptcy Code demonstrates Congress's intent to create a whole system under federal control therefore mandating that the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal, thereby precluding state law remedies for abuse of its proceedings." *Werner,* 799 A.2d at 791 (citing *Shiner,* 706 A.2d at 1238). We note that this statement was made as an aside by the Superior Court in *Werner,* apparently without the benefit of the Third Circuit's decision in *U.S. Express Lines.* In this case, the Superior Court chose to rely upon the line of cases in which they authored opinions, which determined that the Bankruptcy Code preempts state law entirely, including claims of abuse of process. *Accord Glannon v. Garrett & Assocs., Inc.,* 261 B.R. 259, 263–67 (D.Kan.2001); *Mason v. Smith,* 140 N.H. 696, 672 A.2d 705 (1996); *Edmonds v.*

adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal." *MSR Exploration,* 74 F.3d at 914.

*Lawrence Nat'l Bank & Trust Co.*, 16 Kan.App.2d 331, 823 P.2d 219, 221–22 (1991); *Smith v. Mitchell Constr. Co.*, 225 Ga.App. 383, 481 S.E.2d 558, 560–61 (1997); *Sarno v. Thermen*, 239 Ill.App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11, 15–18 (1992); *Idell v. Goodman*, 224 Cal.App.3d 262, 273 Cal. Rptr. 605, 609–10 (1990).

Conversely, a second line of cases exists in which abuse of process has been found to be outside of the scope of preemption of the Bankruptcy Code. The Superior Court decided *Shiner* in 1998 and rejected *Paradise Hotel* (holding that a state court claim premised on actions taken before a bankruptcy court is not preempted), in favor of *Gonzales v. Parks*, 830 F.2d 1033 (9th Cir.1987) (holding that the Bankruptcy Code does preempt the state torts of abuse of process and wrongful use of civil process), and *MSR Exploration. Shiner*, 706 A.2d at 1238. Although the Third Circuit issued its decision in *U.S. Express* shortly before the Superior Court decided *Werner*, the *Werner* court did not consider it. While the Superior Court in *Shiner* and *Werner* expressly rejected *Paradise Hotel*, it did so because it reasoned that *Paradise Hotel* and the Third Circuit stood alone and apart from the reasoning of other jurisdictions.

■■■■ We now turn to the opposing position and examine the reasoning of the courts that have found that state claims of abuse of process are not precluded by the Bankruptcy Code or the Federal Rules of Civil Procedure. In 2002, the Third Circuit held, in *U.S. Express Lines*, that despite the conflict with the Ninth Circuit in *Gonzales, Paradise Hotel* is the law in the Third Circuit.[10] *U.S. Express Lines*, 281 F.3d at 393. In *U.S. Express Lines*, the plaintiffs contended that the

10. It is helpful to note the standards this Court recently adopted regarding the relevancy of federal District and Circuit Court decisions. Specifically, we analyzed the approach of other jurisdictions and, ultimately, six Justices decided to treat inferior federal court decisions as persuasive but not binding, consistent with prior case law within this Commonwealth. *Hall v. Pennsylvania Board of Probation and Parole*, 578 Pa. 245, 851 A.2d 859 (2004) (Opinion announcing the Judgment of the Court) (Justice Baer concurring in the result; Chief Justice Cappy dissenting, joined by Justices Nigro and Saylor):

defendants secured writs of attachment in direct violation of Rule B, which precludes the seizure of maritime assets if the debtor is found within the district in which the litigation is commenced. The plaintiffs stated that the defendants were well aware that Express Lines had its principal office in the Eastern District of Pennsylvania and acted in bad faith in seeking attachments in that district.

The Third Circuit found that "recovery under *Dragonetti* can be more expansive than the sanctions available under Rule 11, which are generally limited to counsel fees or fines, or counsel fees alone under 28 U.S.C. § 1927." *U.S. Express Lines*, 281 F.3d at 392. In discussing the general principles underlying the Dragonetti Act, the Third Circuit stated:

> There appear to be four schools of thought on this question: (1) a decision of an inferior federal court should be treated as persuasive, but not binding, authority; (2) a decision of an inferior federal court should be followed, if reasonably possible, to avoid a conflict between state and federal resolutions of the same question; (3) a decision of an inferior federal court binds the state court; and (4) if the decisions of the inferior federal courts are "numerous and consistent," the state court must follow their dictates. A vast majority of state supreme courts that have addressed this issue have adopted the first approach.

*Id.* at 863.

> More recently, in a number of decisions, this Court has clearly indicated that we are not obligated to follow the decisions of the Third Circuit on issues of federal law. *See, e.g., Commonwealth v. Cross*, 555 Pa. 603, 726 A.2d 333 (1999) (this Court not bound by a Third Circuit decision interpreting United States Supreme Court jurisprudence); *Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390 (1999) (this Court is not constrained by a Third Circuit decision interpreting federal law); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999) (same); *Commonwealth v. Laird*, 555 Pa. 629, 726 A.2d 346 (1999) (same).

*Id.* at 865.

> Chief Justice Cappy summarized the position of the Majority and stated that, "[l]ike the majority, I agree that a decision of an inferior federal court should be treated by this court as persuasive, but not binding, authority, where that decision interprets federal law." *Id.* (Cappy, C.J., dissenting). *Accord Cellucci v. Gen. Motors Corp.*, 450 Pa.Super. 438, 676 A.2d 253, 255 n. 1 (1996), *aff'd*, 550 Pa. 407, 706 A.2d 806 (1998); *City of Philadelphia v. Pa. Pub. Util. Comm'n*, 676 A.2d 1298, 1305 n. 10 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 657, 684 A.2d 558 (1996). The decision of the Third Circuit in *U.S. Express Lines* is not binding, and for the reasons discussed *infra*, we ultimately adopt the reasoning of both the Superior Court and the majority of Circuit Courts that have addressed the issue.

The breadth of the remedy provided by the state statute is a strong indication of its substantive nature. Under the Rules Enabling Act, 28 U.S.C. § 2072(b), procedural rules may not supplant substantive rights[.] ... In *Burlington Northern Railway Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987), the Supreme Court held that "Rules which *incidentally* affect litigants' substantive rights do not violate" the Rules Enabling Act if they are "reasonably necessary to maintain the integrity of that system of rules." *Id.* at 5, 107 S.Ct. 967 (emphasis added).

Following that rationale, the Court later emphasized that Rule 11 was intended to deter frivolous suits in the district courts. *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 552–53, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).... *Business Guides* also rejected the argument that "Rule 11 creates a federal common law of malicious prosecution." *Id.* at 553, 111 S.Ct. 922. Continuing, the Court stated, "[t]he main objective of the Rule is not to reward parties who are victimized by litigation," but to deter baseless filings. *Id.* Although it conceded that sanctioning a party might benefit its adversary, the Court was "confident that district courts will resist the temptation to use sanctions as substitutes for tort damages," *Id.,* and noted that in the event that a district court misapplied the Rule in a particular case, the error could be corrected on appeal. *Id.* at 554, 111 S.Ct. 922. *Business Guides* found no need for such a correction because there, the district court had properly declined to include consequential damages in awarding attorneys' fees and out-of-pocket expenses. *Id.*

*U.S. Express Lines,* 281 F.3d at 392–93; *see also Paul v. Monts,* 906 F.2d 1468, 1475 (10th Cir.1990) (discussing a claim for breach of contract related to a Chapter 11 plan for reorganization and stating, "[w]here the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law.").

In summary, the Third Circuit in *U.S. Express Lines* held that Rule 11 sanctions were available but were intended only to deter baseless filings and not to compensate the victims of such filings.

Our review of extant case law persuades us that the Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation. Therefore, victims of such misconduct may, in appropriate circumstances, bring suit to recover damages under state causes of action.

*U.S. Express Lines*, 281 F.3d at 393.

*U.S. Express Lines* is not directly on point because the facts of that case were limited to a maritime action and Rule 11. The Third Circuit did address the greater sanctions provided by the Bankruptcy Code and held that a Dragonetti claim stands despite the fact that the Bankruptcy Code allows for greater sanctions than those available pursuant to Rule 11, thereby illustrating the importance of a Dragonetti claim. *U.S. Express Lines*, 281 F.3d at 393. In particular, "[d]espite the broad scope of remedies available in the [Bankruptcy] Code and the general exclusivity of the federal courts in bankruptcy, we have held that a state claim for malicious abuse of process was not preempted." *Id.* (citing *Paradise Hotel*, 842 F.2d 47, 51–52 (3d Cir.1988)).

In *Paradise Hotel*, a creditor improperly had filed an involuntary petition for bankruptcy against a debtor. The Third Circuit summarized its decision in *Paradise Hotel*, opining:

[i]n that case, we discovered that because of a gap in the text the [Bankruptcy] Code failed to provide a remedy against a creditor that had improperly filed an involuntary petition for bankruptcy against a debtor. We concluded that Congress did not intend preemption to extend to the point of barring a debtor from the use of a state remedy.

*U.S. Express Lines*, 281 F.3d at 393 (further noting a conflict with the Ninth Circuit in *Gonzales*).

Additionally, other jurisdictions have determined that the Bankruptcy Code and the Federal Rules of Civil Procedure do

not preempt state law claims of abuse of process brought in federal court. *See Sears, Roebuck & Co. v. O'Brien*, 178 F.3d 962, 968 (8th Cir.1999) (holding that an "Iowa law that prohibited Sears from corresponding with debtors represented by counsel is not preempted by federal bankruptcy law" and "that law does not impede Sears in the exercise of its federal bankruptcy rights"); *Silver v. Mendel*, 894 F.2d 598 (3d Cir.1990) (holding that a malicious filing of an involuntary petition for bankruptcy is not protected by the judicial privilege); *Sturm v. Providian Nat'l Bank*, 242 B.R. 599, 602 (Bankr.S.D.W.Va.1999) (holding that a claim under West Virginia statute was not preempted by the Bankruptcy Code based on reasoning of *Sears, Roebuck*); *Matter of Emerald City Records, Inc.*, 9 B.R. 319 (Bankr.N.D.Ga.1981) (holding state law tort claim based on creditor's filing of involuntary bankruptcy petition was not preempted by federal law); *Mullin v. Orthwein*, 772 So.2d 30 (Fla.Dist.Ct.App.2000) (affirming *R.L. LaRoche, infra*, and holding state law tort claims were not preempted by federal law); *R.L. LaRoche, Inc. v. Barnett Bank*, 661 So.2d 855 (Fla.Dist.Ct.App.1995) (holding state law tort claims of abuse of process and malicious prosecution based on creditor's alleged bad faith filing of involuntary bankruptcy petition were not preempted by federal law).

After reviewing the case law from other jurisdictions, we are persuaded that, although the greater sanctions available under the Bankruptcy Code are not directly applicable to the case at hand, the Code's provision of remedies and sanctions implies an intent to govern sanctions as they relate to Bankruptcy Court proceedings. Those sanctions include: (1) 11 U.S.C. § 303(i), where a creditor wrongfully commences an involuntary bankruptcy petition against a debtor; (2) 11 U.S.C. § 362(k), where there is a willful violation of a stay; and (3) 11 U.S.C. 726(a)(4), which addresses the distribution of assets to those with allowed claims "arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine[s] ... are not compensation for actual pecuniary loss." *Koffman*, 182 B.R. at 124 (listing the sanctions available under the Bankruptcy Code).

As well, 11 U.S.C. § 105, mirroring Rule 11, provides that the court "may issue any order, process, or judgment that is necessary or appropriate ... to prevent an abuse of process." *Koffman,* 182 B.R. at 124 (quoting 11 U.S.C. § 105) (omission in original). *Koffman* also cites to: "Rule 1008 of the Federal Rules of Bankruptcy Procedure, which requires filings to 'be verified or contain an unsworn declaration' of truthfulness under penalty of perjury, and Rule 9011, which authorizes sanctions for signing certain documents not 'well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Id.* (quoting Fed.R.Bankr.P. 1008, 9011). These exceptions, although similar to Rule 11, provide protection against perjury and frivolous claims.

As urged by Appellees, the above-listed sanctions provide an inference that Congress intended to preempt state law remedies for frivolous claims in the field of bankruptcy. Further, Appellees note that the Bankruptcy Court may dismiss a case for improper conduct, but, despite the fact that Congress did not choose to preempt a Dragonetti-type state claim, we find that because of the breadth of the Bankruptcy Code, as well as the potential compensation available for the victim of an abuse of bankruptcy court proceedings, Congress intended to preempt a state claim for compensatory damages. We note that this Court may find that Rule 11, 11 U.S.C. § 105, and the remaining Bankruptcy Code provisions do not preempt a state claim of abuse of civil proceedings if, in the future, the Bankruptcy Courts categorically deny compensation to victims of abuse of process or explicitly state that, like Rule 11, the sanctions are not meant to preempt a state abuse of process claim.[11] *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 553–54, 111 S.Ct. 922, 112

---

11. The well-reasoned Opinion of the *Werner* court stated that "Rule 11 sanctions cannot include consequential damages and thus are not a substitute for tort damages." *Werner,* 799 A.2d at 784 (citing the Advisory Committee Notes of Rule 11 that "Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process"). However, no such notice is provided in the Bankruptcy Code, nor has the U.S. Supreme Court addressed the issue as with Rule 11. *See Business Guides, supra.*

L.Ed.2d 1140 (1991), (holding, as discussed *supra*, that Rule 11 is not meant to supplant state tort claims). The remedies available are designed more to compensate the Bankruptcy Court for time wasted and to prevent the misuse of its resources than to compensate a victim. However, because a strict reading of the available sanctions allows for compensation to the victim of a frivolous claim, we find that a state claim for compensatory damages is preempted.

We are persuaded by the reasoning of the Superior Court in *Shiner* and *Werner*, as well as that of the *Koffman* court and its progeny. As stated in *Werner*, part of the policy underlying preemption, in addition to encouraging consistency with the Third Circuit, is to prevent litigants from forum shopping to achieve a different result in federal court than they could obtain in state court. *Werner*, 799 A.2d at 782 (citing *Cellucci* (citing *Commonwealth v. Negri*, 419 Pa. 117, 213 A.2d 670 (1965); *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993))). The *Werner* court explained the difference between allowing a Dragonetti Act claim to be heard in a case involving an abuse of process centered on a civil RICO claim in federal courts and denying that an abuse of process claim be heard when the underlying federal court claim is based on the Bankruptcy Code. "[The] Bankruptcy Code demonstrates Congress's intent to create a whole system under federal control therefore mandating that the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal, thereby precluding state law remedies for abuse of its proceedings." *Werner*, 799 A.2d at 791 (citing *Shiner*, 706 A.2d at 1238).

Therefore, we determine that because the Bankruptcy Code has potential remedies available for a situation such as the case *sub judice* involving non-bankruptcy counterclaims, the matter falls within the scope of field preemption. Appellant Jackson may be made whole if he were limited exclusively to the Bankruptcy Court sanctions without resort to state law. We further note the concern in *Raymark* that the mere possibility of being sued in tort in state court can, in some instances, deter persons from exercising their rights in bank-

ruptcy. *Raymark,* 1997 WL 359333 at \*10–\*11; *see also MSR Exploration,* 74 F.3d 910, 916 (9th Cir.1996) (opining that allowing a state claim would create a situation "where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding").

Ultimately, we conclude that the Bankruptcy Code and Federal Rules of Civil Procedure preempt Appellant's rights pursuant to state law for compensation in a wrongful use of civil proceedings or abuse of process claim grounded in bankruptcy court proceedings. Accordingly, we affirm the Order of the Superior Court.

Chief Justice CAPPY and Justices CASTILLE, SAYLOR and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice EAKIN files a concurring opinion in which Chief Justice CAPPY joins.

Justice EAKIN concurring.

I join the majority opinion in its entirety, but write separately to note appellant brought a state law claim for wrongful use of civil proceedings and abuse of process against appellees for legal proceedings that took place in "Bankruptcy Court, [t]he United States District Court for the Eastern District of Pennsylvania, [t]he United States Court of Appeals for the Third Circuit, the Delaware County Court of Common Pleas[, and the] Pennsylvania Superior Court." Appellant's Complaint, 12/18/00, 90. I agree with the majority that federal bankruptcy law preempts the claim for conduct that occurred in Bankruptcy Court, the District Court, and the Third Circuit. *See Shiner v. Moriarty,* 706 A.2d 1228, 1237–38 (Pa.Super.1998). Appellant's suit seeking payment for the share of a building partnership was a state claim brought in state court. I am not convinced federal bankruptcy law preempts a state claim for wrongful use of civil proceedings and abuse of

process against appellees for their conduct in a state trial court action.

Chief Justice CAPPY joins this concurring opinion.