**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2476
_____


JESSE J. LANGMAN,
                    Appellant

v.

KEYSTONE NAZARETH BANK & TRUST COMPANY; C. PALMER ZIGMUND;
STEPHEN W. WIENER, ESQ.; WIENER & WIENER LLP; CONSTANTINE M.
VASILIADIS, ESQ.; KOLB VASILIADIS AND FLORENZ, LLP; SANDRA
LANGMAN


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-07-cv-02662)
District Judge: Hon. Stewart Dalzell
_____


Submitted under Third Circuit LAR 34.1(a)
October 29, 2012

Before: SLOVITER, AMBRO and ALDISERT, <u>Circuit Judges</u>.

(Filed: November 1, 2012)
_____

OPINION OF THE COURT
_____


ALDISERT, <u>Circuit Judge</u>.

This appeal by Jesse Langman (hereafter "Jesse"), beneficiary of certain intervivos trusts created by his parents, requires us to decide if the United States District Court for the Eastern District of Pennsylvania properly granted summary judgment on the basis of a two-year statute of limitations bar. We hold that the Court correctly granted summary judgment in favor of Appellees, who were Defendants in the District Court in a complaint brought by Jesse. Pennsylvania provides a two-year statute of limitations for claims of abuse of process, 42 Pa. C.S.A. § 5524(1); it provides a similar two-year statute of limitations for claims of breach of fiduciary duty, 42 Pa. C.S.A. § 5524(7). Jesse's claims against Appellees ripened in 2004, but he did not bring his claims for breach of fiduciary duty and abuse of process until June 26, 2007, running afoul of the two-year statute of limitations. He argues that Appellees continued to act in breach of their fiduciary duties within the limitations period, triggering application of the "continuing violations doctrine," and that we should treat his abuse of process claim as a statutory wrongful use of civil proceedings claim, which would preclude summary judgment based on violation of the statute of limitations. We disagree, hold that the District Court properly granted summary judgment for Appellees, and will affirm.

I.

Because we write only for the parties, who are familiar with the facts and the proceedings in this case, we will recite only those facts relevant to the issues of law discussed.

Jesse's father, James H. Langman (hereafter "James"), died testate in 2001. Because no executor named in the will was able to serve as Estate administrator, the Orphans Court of Lehigh County granted letters of administration to Sandra Langman, Jesse's half-sister. In 1989 James created the Deer Park Trust, the Hanford Trust, and the

2

Terlinqua Trust. The Deer Park Trust was funded by two parcels of land totaling 100 acres in Lehigh County, Pennsylvania; the Hanford Trust was funded by approximately 54 acres of land in Lehigh County as well as the structures thereon; and the Terlinqua Trust was funded by a three-unit apartment building located in Slatington, Pennsylvania. Another trust known as the Allis Trust was created by Miriam Landes, James's second wife and mother of Jesse; it was funded with automobiles, equity accounts and a time share. Jesse was named as the sole beneficiary of all four trusts.

The Estate's administrators and their counsel required information and records concerning the Trusts for estate tax purposes, and Jesse controlled the Trust records and information regarding the decedent's finances. The Estate was unable to get these records from Jesse, and it filed a Turnover Petition against him in May 2002. As part of an agreement reached in November 2002 with Keystone Nazareth Bank & Trust Company ("KNBT"), which had replaced Sandra as the administrator, Jesse agreed to give it "all of the Decedent's assets and records including but not limited to tangible personal property, mail, business records and personal records." Jesse did not provide the Estate with the needed documents. Thereafter, KNBT filed a contempt petition against Jesse in February 2003. KNBT did not receive all of the information that it needed to administer the Estate until March 2004, more than one year after Jesse first agreed to provide KNBT with these documents.

By late 2003, the Deer Park Trust and the Terlinqua Trust desired to sell some of their property. The Trusts filed petitions for declaratory relief in the Orphans Court of Lehigh County, to which Appellees responded. The Trusts later filed motions for summary judgment, and the parties ultimately agreed that the Trusts were entitled to summary judgment on each petition. The Orphans Court issued an Order granting the

3

motions for summary judgment on June 30, 2005. No appeal was taken. The Appellees' actions in opposition to this sale of property eventually formed the basis for Jesse's abuse of process claim.

During roughly the same time period, Jesse and the Trusts engaged in a dispute with the Estate and its lawyers over the filing of the Estate's federal tax return. The Estate's lawyers filed the return late, on October 1, 2004, and Jesse and the Trusts believed at the time of filing that the return was inaccurate. The main dispute between Jesse and the Estate was the percentage of Deer Park Trust assets to be included on the return. The Estate reported 50% of Trust assets, while Jesse and his lawyer believed that the Estate should have reported 100% of Trust assets. The Deer Park Trust submitted a pro forma tax return indicating their position that 100% of the Deer Park Trust assets were reportable for Estate tax purposes. Throughout a 14-month audit, the assigned IRS agent communicated separately with Jesse and the Estate regarding the tax return. On November 22, 2005, the Estate signed an approval of changes to the return made by the IRS, which ultimately determined that 100% of the Deer Park Trust assets were reportable. The Appellees' actions with regard to the tax return formed the basis for Jesse's breach of fiduciary duty claim.

On June 26, 2007, Jesse brought suit against KNBT and its employee C. Palmer Zigmund (the "KNBT Defendants"), the attorneys who represented the Estate's administrators (the "Wiener Defendants"), the attorneys who represented James's other children (the "Vasiliadis Defendants"), and Sandra Langman. Jesse asserted that all Defendants abused civil process under the Dragonetti Act, 42 Pa. C.S.A § 8351 et seq, and that the KNBT and Wiener Defendants breached their fiduciary duties to Jesse and to

4

the Trusts.[1] Defendants filed a motion to dismiss, which was granted in part and denied in part. The claim for breach of fiduciary duty to the Trusts survived, and although the Court dismissed Jesse's statutory abuse of civil process claim, it found that Jesse had pleaded sufficient facts to support a common law abuse of process claim. The Defendants moved for summary judgment in the District Court on Jesse's claims for abuse of process and breach of fiduciary duty, and the Court ruled "we will grant the motions on those claims because we conclude that Jesse failed to file them within the applicable statutes of limitations." Langman v. Keystone Nat'l Bank & Trust Co., 672 F. Supp. 2d 691, 696-697 (E.D. Pa. 2009). Subsequently, the Court denied Jesse's motion for reconsideration. After Jesse informed the Court that he intended to dismiss a remaining claim against his sister Sandra, the Court granted her summary judgment on May 11, 2011, clearing the path to Jesse's instant, timely appeal.[2]

## II.

The District Court correctly held that Jesse's breach of fiduciary duty claim relating to the Estate's handling of James's federal estate tax return was time barred. The return was filed on October 1, 2004, more than two years before this case was filed on June 26, 2007. Under Pennsylvania law, the statute of limitations for breach of fiduciary duty claims is two years. 42 Pa. C.S.A. § 5524. For breach of fiduciary duty claims the statute of limitations period generally begins to run "when [a] trustee openly and

---

[1] In addition, Jesse brought a conversion claim, which is not at issue in this appeal.
[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. The standard of review of a grant of summary judgment is de novo. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). All evidence must be viewed in the light most favorable to the Appellant here and all reasonable inferences drawn in his favor. Id. Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Federal Rules of Civil Procedure.

unequivocally violates his duties." Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005) (citations omitted). Jesse claims that Appellees breached their fiduciary duty by delaying the filing of the Estate's tax return, and by filing an erroneous return. The return was filed well outside of the two-year limitations period on October 1, 2004, and it is clear that Jesse and his attorneys were aware of this filing and believed it to be late and erroneous at that time.

Jesse contends that the District Court incorrectly held that his breach of fiduciary duty claim related to Appellees' handling of the Estate tax return was time barred, because Appellees acted within the limitations period in furtherance of their original breach. He argues that if the Court properly applied the continuing violations doctrine, see, e.g., Cowell v. Palmer Twp., 263 F.3d 286, 291-293 (3d Cir. 2001), it would have found acts by Appellees sufficient to bring his claim within the statute of limitations. The continuing violations doctrine is an "equitable exception to the timely filing requirement," and allows a court "to grant relief for . . . earlier related acts that would otherwise be time barred" "when a defendant's conduct is part of a continuing practice . . . so long as the last act evidencing the continuing practice falls within the limitations period . . . ." Id. at 292 (internal quotation marks and citations omitted).

As a preliminary matter, Appellees question the propriety of applying the continuing violations doctrine because this Court has said it "should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." See Cowell, 263 F.3d at 295. Although Jesse's diligence in pursuit of his breach of fiduciary duty claim is indeed questionable, the more critical issue is that he has pointed to no acts within the limitations period sufficient to trigger application of the doctrine.

Jesse must demonstrate that Appellees committed acts in furtherance of the initial breach of fiduciary duty between June 27, 2005, the date the statute of limitations began to run, and November 22, 2005, the date the tax return issue was resolved. To demonstrate such acts were committed, Jesse points us to billing records of the Estate's lawyers and Jesse's lawyer that indicate conversations with the IRS agent conducting the audit. Notwithstanding Jesse's protestations that the billing records of both attorneys must be read together, we are unable to conclude that entries from Jesse's lawyer's billing records show that Appellees committed acts sufficient to trigger the continuing violations doctrine. Jesse had the burden of pointing to specific record facts which demonstrate a genuine dispute as to material fact regarding a breach of fiduciary duty within the two-year window. We agree completely with the District Court that bare billing records from the Estate's attorneys indicating conversations with the IRS agent simply fail to meet this burden. Equally unpersuasive is Jesse's contention, raised for the first time in this appeal, that the IRS agent, whom Jesse never deposed, would testify at trial to Appellees' alleged breaches during the limitation period. Accordingly we agree with the District Court that Jesse "has failed to point to specific facts in the record to show that the Wiener and [KNBT] Defendants committed any acts that would breach a fiduciary duty during the statute of limitations period." Langman, 672 F. Supp. 2d at 704.

III.

Jesse contends also that the District Court improperly granted summary judgment in favor of Appellees on his claim for abuse of process. He anchors this claim to Appellees' opposition to the petitions filed by the Trusts in the Orphans Court. In his complaint, Jesse pleaded this claim as "Abuse of Civil Process" under Pennsylvania's Dragonetti Act, 42 Pa. C.S.A. § 8351 et seq. In 2008, the District Court dismissed this

7

claim, holding that Appellees' responses to litigation initiated by the Trusts in the Orphans Court could not be construed as a violation of the Dragonetti Act, § 8351, but allowed Jesse to proceed under the common law tort of abuse of process. "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." Lerner v. Lerner, 954 A.2d 1229, 1238 (Pa. Super. 1998) (quoting Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998)). "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983) (citation omitted). As Jesse concedes in his brief, if his claim is construed as a common law abuse of process claim, it is time-barred, because the three elements of this claim were satisfied prior to June 27, 2005, when the statute of limitations for his common law abuse of process claim began to run.

Unlike the common law tort of abuse of process, a necessary element of a wrongful use of civil proceedings action under the Dragonetti Act is that "[t]he proceedings have terminated in favor of the person against whom they are brought." 42 Pa. C.S.A. § 8351(a)(2). Jesse contends that his abuse of process claim must be considered as an action under the Dragonetti Act, and thus his claim did not ripen until June 30, 2005 when the underlying judicial proceedings in the Orphans Court terminated in his favor. Jesse primarily bases his argument on a 2006 statement by the Pennsylvania Supreme Court that the torts of malicious prosecution and abuse of process are "subsumed" within § 8351. See Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien, 908 A.2d 875, 877 n.1 (Pa. 2006). However, the Pennsylvania Supreme Court's statement in Stone Crushed regarding subsumption within § 8351 was obiter dicta.

8

Absent a controlling Pennsylvania Supreme Court decision, "we must predict how it would rule if faced with the issue" by "look[ing] to decisions of state intermediate appellate courts, of federal courts interpreting [Pennsylvania] law, and of other state supreme courts that have addressed the issue." Spence v. ESAB Group, Inc., 623 F.3d 212, 216-217 (3d Cir. 2010) (internal quotation marks and citations omitted).

The District Court conducted a thorough analysis of both Pennsylvania Superior Court and District Court decisions interpreting Pennsylvania law after Stone Crushed, and concluded that a judicial "chorus of support" demonstrates that a plaintiff need not show favorable termination of judicial proceedings as part of an abuse of process claim. Langman, 672 F. Supp. 2d at 700-701. These courts have consistently treated common law abuse of process claims as separate from Dragonetti § 8351 wrongful use of civil proceedings claims, notwithstanding the Stone Crushed dicta. See, e.g., Lerner, 954 A.2d at 1238 (citing prior Superior Court precedent for proposition that for an abuse of process claim "it is immaterial . . . even that the proceedings terminated in favor of the person instituting or initiating them") (citation omitted). See also Sabella v. Estate of Milides, 992 A.2d 180 (Pa. Super. 2010); Cruz. v. Princeton Ins. Co., 972 A.2d 14 (Pa. Super. 2009).

Jesse does not and cannot point us to any cases after Stone Crushed where an abuse of process claim was treated as subsumed within § 8351, or where a court required a plaintiff bringing an abuse of process claim to demonstrate that judicial proceedings terminated in his or her favor. The District Court predicted that the Pennsylvania Supreme Court would, as lower Pennsylvania courts have, continue to distinguish

9

common law abuse of process claims from statutory § 8351 claims, and we agree with the Court's prediction.[3]

Under Pennsylvania law, it appears that common law abuse of process remains a separate cause of action, distinct from an action under the Dragonetti Act, § 8351 et seq. Because Jesse's claim survived as a common law abuse of process claim, he did not need to demonstrate favorable termination of judicial proceedings as an element of his claim. His claim, therefore, accrued well before the statutory limitation period, and the District Court correctly granted summary judgment in favor of Appellees.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.

---

[3] In 2002, this Court noted the historical distinction between abuse of process and malicious use of process claims, but stated that "it appears that both torts are subsumed within the general scope of the [Dragonetti] Act." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002). However, it is now clear that abuse of process remains a viable cause of action distinct from § 8351, and we reject Jesse's argument to the contrary.