J-A31013-16

2017 PA Super 40

FREUNDLICH & LITTMAN, LLC AND     IN THE SUPERIOR COURT OF
GREGORY CREED LITTMAN, ESQUIRE,     PENNSYLVANIA

        Appellants

         v.

EDWARD T. FEIERSTEIN, BRUCE
CHASAN AND LAW OFFICES OF BRUCE J.
CHASAN,

        Appellees         No. 3381 EDA 2015

Appeal from the Order Entered October 8, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  150401569 April Term, 2015

BEFORE:  BENDER, P.J.E., MOULTON, J., and FITZGERALD, J.[*]

OPINION BY BENDER, P.J.E.:         **FILED FEBRUARY 23, 2017**

Appellants, Freundlich & Littman, LLC and Gregory Creed Littman,

Esquire, appeal from the trial court's October 8, 2015 order sustaining

Appellees', Edward T. Feierstein, Bruce Chasan and Law Offices of Bruce J.

Chasan, preliminary objections in the nature of a demurrer.  After careful

review, we vacate and remand.

The trial court summarized the factual background and procedural

history of this case as follows:

> On June 25, 2013, [Appellants] Freund[l]ich & Littman,
> LLC and Gregory Creed Littman, Esq. … were hired to represent
> a client in a negligence suit against [Appellees] Bruce Chasan

---

[*] Former Justice specially assigned to the Superior Court.

and Law Office of Bruce Chasan LLC's … client. [Appellees] filed a counterclaim in the suit against [Appellants]. [Appellants] allege that the counterclaim was completely meritless and procedurally improper. [Appellants] further allege that the counterclaim arose, not out of a genuine case strategy, but as retaliation for one of the [Appellants'] brother[']s testifying as a key witness in an unrelated criminal trial against [Appellee Feierstein]. [Appellants] claim that [Appellees'] litigation of the counterclaim in the case were attempts to bully and harass [Appellants] from dropping the negligence case and to intimidate [Appellant Littman's] brother into not testifying in the unrelated criminal matter. [Appellants] also cite two e-mails [Appellee Feierstein] sent that amounted to a litany of insults to both [Appellant Littman] and his brother.

In April 2014, the Honorable Alice Beck Dubow, then Judge of the Court of Common Pleas and now Judge of the Superior Court of Pennsylvania, dismissed the counterclaim with prejudice and [Appellees] did not appeal.[1] In June 2014, the case proceeded to arbitration which, while contentious, resulted in a decision for [Appellants]. Although [Appellees] appealed the decision, the case eventually settled. However, through this time, [Appellants] allege that [Appellees'] behavior escalated, including several threatening and insulting e-mails.

In the instant case, [Appellants] are suing [Appellees] for the injuries incurred from the allegedly frivolous counterclaim, which they claim amounted to a wrongful use of proceedings and an abuse of process. On July 20, 2015, [Appellees] filed Preliminary Objections to [Appellants'] Complaint seeking, *inter alia*, a demurrer of the Complaint due to judicial immunity. On August 9, 2015, [Appellants] filed a response to [Appellees'] Preliminary Objections in opposition. On October 8, 2015, this [c]ourt entered an order granting [Appellees'] Preliminary Objections in the nature of a demurrer, based on the doctrine of

---

[1] We note that Appellees adamantly contest this fact, asserting that "Judge Dubow **never** entered a ruling dismissing [Appellee] Feierstein's Counterclaim, with prejudice." *See* Appellees' Brief at 9 n.3 (emphasis in original; citations omitted). Instead, Appellees claim that Judge Dubow merely denied with prejudice the recovery of attorneys' fees in connection with the litigation of a discovery motion. *Id.*

- 2 -

judicial immunity. On October 15, 2015, [Appellants] filed a Motion for Reconsideration. On October 21, 2015, [Appellees] filed their response opposing [Appellants'] Motion for Reconsideration. On October 27, 2015, this [c]ourt denied [Appellants'] Motion for Reconsideration. On November 2, 2015, [Appellants] filed a Notice of Appeal. That same day, this Court issued a [Pa.R.A.P.] 1925(b) order. On November 12, 2015, [Appellants] responded with a Statement of Matters Complained on Appeal....

Trial Court Opinion (TCO), 1/12/2016, at 1-3.

In sustaining Appellees' preliminary objections in the nature of a demurrer and dismissing Appellants' claims for wrongful use of civil proceedings and abuse of process, the trial court relied exclusively on the doctrine of judicial privilege, also known as judicial immunity. It explained that, "[g]enerally, an attorney is entitled to absolute immunity for actions taken in the course of representing a client in judicial proceedings." TCO at 4 (citation omitted). As a result — despite acknowledging that communications made in the case were "often repugnant and completely inappropriate" — the trial court determined that the doctrine of judicial privilege barred litigation of Appellants' claims because "[a]ll the facts serving as the basis of [their] [c]omplaint were clearly filed as a matter of course for the judicial proceeding as they were counterclaims and other communications attempting to resolve the case." *See* TCO at 6-7.

In their appeal to this Court, Appellants now raise the following two issues for our review:

> 1. Did the trial court err and abuse its discretion in holding that judicial privilege and/or judicial immunity shields an attorney from any civil liability in a[n] Abuse of Process, Misuse of Process and

Wrongful Use of Process action where the litigation is instituted both without probable cause and for a primary purpose other than securing the proper adjudication of a claim?

2. Did the trial court err and abuse its discretion holding that … Appellees['] actions of filing a Counterclaim against … Appellants was within the regular course of judicial proceedings when Appellees['] motives included witness intimidation in a separate criminal matter in Montgomery County?

Appellants' Brief at 8.

Initially, we set forth our standard of review:

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (internal citations omitted). We further note that "[w]hether a privilege exists/applies in a given context is a question of law for the court." *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 767 (Pa. Super. 2009) (citation omitted).

- 4 -

First, Appellants argue that "[j]udicial privilege does not shield an attorney from civil liability in a 42 [Pa.C.S.] § 8351[2] and common law abuse and misuse of [c]ivil [p]rocess action where the litigation is instituted both without probable cause and for a primary purpose other than securing the proper adjudication of a claim including witness intimidation." Appellants' Brief at 15 (emphasis omitted). They argue that "the Dragonetti Act and [j]udicial [p]rivilege are not mutually exclusive and can co-exist. ***Any holding to the contrary would prohibit any [s]tatutory or [c]ommon [l]aw action against an [a]ttorney for abuse and/or misuse of process***." ***Id.*** at 16 (emphasis added; citation omitted). We agree.

The doctrine of judicial privilege provides "absolute immunity for communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." ***Bochetto v. Gibson***, 860 A.2d 67, 71 (Pa. 2004) (citation, footnote, emphasis, and internal quotations omitted). "[T]he privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance

_____

[2] This statute, commonly referred to as the "Dragonetti Act," regards the wrongful use of civil proceedings. ***See*** 42 Pa.C.S. § 8351 *et seq*. For a further discussion of this statute, see *infra.*

- 5 -

of the client's interest." **Richmond**, 35 A.3d at 785 (quoting **Pawlowski v. Smorto**, 588 A.2d 36, 41-42 (Pa. Super. 1991)) (emphasis omitted). Moreover, "Pennsylvania … broadly applies the privilege to pertinent, relevant and material [] statements made during the judicial process. Courts have continually protected a variety of communications made at various proceedings as well as statements with only minor relation to the underlying case." **Id.** at 786 (citations and quotation marks omitted). In fact, "statements made during judicial proceedings are privileged even if the statements are made falsely or maliciously without reasonable and probable cause." **Id.** (citations and quotation marks omitted).

Our Supreme Court has explained that "[judicial] privilege is based on the public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate." **Bochetto**, 860 A.2d at 71 (citation omitted). It has recognized that "[t]o assure that such claims are justly resolved, it is essential that pertinent issues be aired in a manner that is unfettered by the threat of libel or slander suits being filed." **Id.** (citation omitted). Over the years, courts have expanded the scope of judicial privilege to apply to torts beyond just libel and slander. **See Moses v. McWilliams**, 549 A.2d 950, 957 (Pa. Super. 1988) (*en banc*) ("While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity

from civil liability to other alleged torts when they occur in connection with judicial proceedings."). Moreover, "this privilege is extended not only to parties so that they are not deterred from using the courts, but also to judges so that they may administer the law without fear of consequences, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him [or her] to best represent [a] client's interests." *Bochetto*, 860 A.2d at 71 (quotation marks and citation omitted).

Here, Appellants bring claims for wrongful use of civil proceedings, pursuant to 42 Pa.C.S. § 8351 *et seq.*, and common law actions for abuse and misuse of process. It is well-established that "[a]n action for wrongful use of civil proceedings differs from an action for abuse of process." *Sabella v. Estate of Milides*, 992 A.2d 180, 187-88 (Pa. Super. 2010) (citation omitted). Abuse of process is a state common law claim and it encompasses "the improper use of process after it has been issued, that is, a perversion of it." *Id.* at 188; *see also Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002).[3] It requires "[s]ome definite act or threat not

_____

[3] We note that our Supreme Court has stated, in dicta, that the Dragonetti Act "subsumes both the torts of malicious use of process and abuse of process." *See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 877 n.1 (Pa. 2006). Nevertheless, since *Stone Crushed Partnership*, this Court has continued to recognize common law abuse of process claims. *Cruz v. Princeton Insurance Company*, 972 A.2d 14, 15 n.1 (Pa. Super. 2009) (*en banc*) (explaining that to establish a claim for abuse of process, "it must be shown that the defendant (1) used a
*(Footnote Continued Next Page)*

authorized by the process, or aimed at an objective not legitimate in the use of the process...[;] there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. 1984) (citations omitted; brackets in original).

In contrast, "[m]alicious use of civil process has to do with the wrongful initiation of such process." *Sabella*, 992 A.2d at 188. "[A]llegations of malicious prosecution invoke Pennsylvania's statutory law in the form of [the] wrongful use of civil proceedings statute or 'Dragonetti Act.'" *Werner*, 799 A.2d at 785. This Court has described wrongful use of civil proceedings as "a tort arising when a person institutes civil proceedings with a malicious motive and lacking probable cause." *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 971 (Pa. Super. 2011) (citation omitted). By enacting the Dragonetti Act, "our legislature … abolished the common law rule which held that an action for malicious use of process could not be brought absent a seizure of the plaintiff's person or property." *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 30 (Pa. Super. 1990) (citation

*(Footnote Continued)* _____

legal process against the plaintiff[;] (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff") (citation omitted); *Sabella*, 992 A.2d at 188 (continuing to recognize the common law cause of action for abuse of process); *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (detailing how Pennsylvania common law defines a cause of action for abuse of process) (citation omitted).

omitted).[4]  This Court has observed that "by making it easier to establish a case of malicious prosecution, the Pennsylvania legislature has expressed an interest in providing greater protection to those individuals and entities who may be forced to defend a baseless suit."  *Id.* at 31.

The Dragonetti Act requires, in pertinent part, the following elements to establish a cause of action under the statute:

> **(a)  Elements of action.--**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1)  He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2)  The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a).  Additionally, this statute allows a plaintiff to seek recovery for, *inter alia*, "[t]he harm to his [or her] reputation by any defamatory matter alleged as the basis of the proceedings[.]"  42 Pa.C.S. § 8353(2).

---

[4]  ***See also*** Remarks of Representative Spencer, 70 Pa. Legislative Journal (House) at 2634 (Nov. 19, 1980) (explaining that the "purpose" of the Dragonetti Act "is to abolish what is known as the old English rule[,]" and resolve "whether or not a person has to be imprisoned or his personal property confiscated before he [or she] can seek redress").

Here, Appellants argue that "[t]he trial court erred and abused its discretion by making the blanket ruling that any and all conduct[,] no matter how perverse, repugnant and completely inappropriate[,] is protected by the [j]udicial [p]rivilege." Appellants' Brief at 21 (internal quotations and citations to the record omitted). They maintain that "judicial privilege would not be available to Appellees if it were proved through discovery or at trial that they participated in and furthered a perversion of legal process." *Id.* at 22 (citations omitted). In other words, Appellants seem to argue that judicial privilege does not apply to claims regarding wrongful use of civil proceedings and abuse of process. In support, Appellants cite ***Silver v. Mendel***, 894 F.2d 598 (3d Cir. 1990),[5] in which the United States Court of Appeals for the Third Circuit reasoned that "***Pennsylvania would not have the Dragonetti Act if Pennsylvania's judicial privilege protected the filing of an action without probable cause and primarily for a purpose other than to secure relief***." *Id.* (emphasis added). It further stated:

> The judicial privilege has long existed in jurisdictions which, like Pennsylvania, recognize the tort of wrongful use of civil proceedings. These two policies—protection of communications necessary to the litigation of claims and imposition of liability for the wrongful use of civil proceedings—can coexist because imposition of liability for the wrongful use of

---

[5] Our Supreme Court has declined to follow ***Silver*** on other grounds, specifically by holding that the Bankruptcy Code "preempts a state law claim of abuse of process based upon a frivolous claim filed in Bankruptcy Court proceedings…." *See **Stone Crushed Partnership***, 908 A.2d at 880.

civil proceedings occurs only when litigation is instituted both without probable cause and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based and because, when these requirements are met, immunity for the filing of the complaint is not necessary to further the interests protected by judicial immunity.

*Id.* at 603-04 (footnote and emphasis omitted).

In applying judicial privilege to Appellants' complaint alleging wrongful use of civil proceedings and abuse of process, the trial court cites multiple cases to demonstrate that judicial privilege attaches to **all** tortious behavior, including Appellants' claims of malicious use and abuse of process.[6] **See** TCO at 5. However, neither it nor Appellees have cited any cases — and we have found none — where this Court or our Supreme Court have held that judicial privilege bars litigation of claims specifically arising under the Dragonetti Act.[7] To reach such a holding would virtually eviscerate this

---

[6] The trial court cites the case of **Brown v. Delaware Valley Transplant Program**, 539 A.2d 1372 (Pa. Super. 1988), asserting that this Court affirmed the dismissal of a claim for abuse of process because judicial privilege applied. **See** TCO at 5. We believe this is an inaccurate statement. Although the underlying complaint in that case included, *inter alia*, a claim for malicious use of process, it was dismissed by the trial court because the appellants "failed to allege the requisite elements of an action for malicious use of process under 42 Pa.C.S. § 8351, as [the appellees'] petition [in the prior proceeding] did not assert claims against [the] appellants or seek any relief from them." **Brown**, 539 A.2d at 1374. On appeal to this Court, the appellants did not contest that aspect of the trial court's ruling.

[7] We find persuasive the case of **Lin v. Rohn Haas Co.**, in which the United States District Court for the Eastern District of Pennsylvania considered whether Pennsylvania's judicial privilege provides a defense to a retaliation claim under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. §§ 952 *et seq.* **Lin v. Rohn Haas Co.**, No. 2:11-cv-3158-WY, 2014 WL
*(Footnote Continued Next Page)*

statutory cause of action, which only took effect in 1981.[8]   In addition, as stated *supra*, the Dragonetti Act explicitly permits a plaintiff to recover for "the harm to his [or her] reputation by any defamatory matter alleged as the basis of the proceedings[,]" which further suggests that judicial privilege does not apply to actions brought pursuant to this statute.  **See** 42 Pa.C.S. § 8353(2).

We also struggle with the trial court's conclusion that judicial privilege must apply to Appellants' common law abuse of process claim.  Our research has uncovered only one appellate case holding that judicial privilege barred an abuse of process claim in this Commonwealth.   In that case, the appellant filed a complaint, "alleging causes of action sounding in libel, conspiracy to libel, malicious use and abuse of process, and invasion of privacy; all arising out of a series of alleged libelous statements contained in a Petition for Writ of Habeas Corpus and in a brief in support thereof…."

*(Footnote Continued)* ───────────

3509982, at *1 (E.D. Pa. July 16, 2014).  In that case, the plaintiff sued her former employer for, among other things, its conduct in a lawsuit it initiated in state court.  **Id.**  In determining that judicial privilege did not apply, the court observed that the employer did not present authority identifying "the judicial privilege as a defense to a statutory cause of action such as the PHRA, let alone [authority that] identifies the judicial privilege as a defense to a PHRA claim specifically."  **Id.** (citations omitted).

[8] This Court has previously noted that the Dragonetti Act became effective on February 17, 1981, and "is applicable to causes of action accruing thereafter…."  **See Shaffer**, 473 A.2d at 1019.

***Passon v. Spritzer***, 419 A.2d 1258, 1259 (Pa. Super. 1980).[9]  In short,

the libelous statements purportedly "represent[ed] the latest effort by [the]

appellee[, who had been convicted of killing her husband,] to cast suspicion

upon [the] appellant[, the brother-in-law of the appellee,] and thereby

create[d] doubt as to the appellee's guilt for the murder of her (appellee's)

husband…."  ***Id.***  (footnote omitted).  The appellee filed preliminary

objections in the nature of a demurrer, of which we noted "[t]he gravamen

of [the] appellees' demurrer is the defense of absolute privilege uttered in

and relevant to a judicial proceeding."  ***Id.***[10]  The trial court sustained the

appellees' preliminary objections and the appellant subsequently appealed to

this Court.  On appeal, we affirmed the trial court's order; notably, however,

the appellant did not specifically question, nor did this Court analyze, the

application of judicial privilege to his causes of action for malicious use and

abuse of process.

Indeed, even Appellees seem to acknowledge the folly of such a broad

application of judicial privilege, declaring that "it was not Appellees' intent to

suggest that the doctrine of judicial immunity/privilege bars a well-pleaded

claim under the Dragonetti Act, or a well-pleaded claim for common law

---

[9] We note that this case predates the Dragonetti Act.

[10] Based on this language, it is unclear to us if other defenses aside from judicial privilege had been raised, which may have barred the appellant's malicious use and abuse of process claims.

abuse of process. Rather, Appellees argued that … Appellants failed to state legally valid claims for wrongful use of civil proceedings and abuse of process." Appellees' Brief at 34-35 (citations to record omitted). Yet, in its opinion, the trial court never addressed whether Appellants stated 'legally valid claims' for those causes of action, but instead applied judicial privilege on the sole basis that "[a]ll the facts serving as the basis of the [c]omplaint were clearly filed as a matter of course for the judicial proceeding…." TCO at 6. It seems axiomatic that, in order to litigate a claim under the Dragonetti Act or for common law abuse of process, the aggrieved party would have to discuss, at the very least, the pleadings and allegations underlying the prior, purportedly improper action.

Furthermore, we conclude that applying judicial privilege in this case would not further its purpose. Our Supreme Court has stated that judicial privilege "has been applied by the Superior Court in actions other than for defamation when the court has determined that **the extension of immunity is in furtherance of the policy underlying the doctrine**." **LLMD of Michigan, Inc. v. Jackson-Cross Co.**, 740 A.2d 186, 189 (Pa. 1999) (citations omitted; emphasis added).[11] This Court has previously

_____

[11] We have indeed considered the policy implications of applying judicial privilege in multiple cases. **See McGuire v. Shubert**, 722 A.2d 1087, 1091 (Pa. Super. 1998) ("We find that the policy bases for applying the doctrine of absolute immunity … are not present in the instant appeal."); **Moses**, 549 A.2d at 957 ("Such an extension of immunity evinces the strong policy behind the privilege…. Recognizing a cause of action for breach of
*(Footnote Continued Next Page)*

- 14 -

recognized that the policy underlying judicial privilege is to "leave reasonably unobstructed the paths which lead to the ascertainment of truth and to encourage witnesses with knowledge of facts relevant to judicial proceedings to give complete and unintimidated testimony." **Moses**, 549 A.2d at 957 (citations and quotations omitted). However, individuals who bring lawsuits with malicious motive and lacking probable cause, or that use the legal process for an illegitimate end after a suit has been initiated, are not seeking the ascertainment of truth or to encourage candor from witnesses. Moreover, courts throughout this Commonwealth have recognized that parties should be held liable for bringing improper actions and exploiting the legal process.[12] Finally, adequate safeguards exist to ensure that a bona fide litigant is not penalized for pursing an action or defending itself.[13]

*(Footnote Continued)* ———————————————

confidentiality in the factual context of the case at bar will undermine this policy."); **Clodgo by Clodgo v. Bowman**, 601 A.2d 342, 345-46 (Pa. Super. 1992) ("The rationale for the immunity applies just as strongly to medical malpractice actions as to any other type of civil action.").

[12] **See, e.g., McNeil v. Jordan**, 894 A.2d 1260, 1274 (Pa. 2006) ("This concern for dilatory, vexatious, or otherwise abusive litigation conduct is reflected elsewhere in Pennsylvania law. Specifically, our 'Dragonetti Act[]'… provides a statutory basis for relief for wrongful use of civil proceedings."); **Stone Crushed Partnership**, 908 A.2d at 877 n.1 ("In response to frivolous lawsuits, the Pennsylvania Legislature enacted the [Dragonetti] Act, which punishes both the client and the attorney for bringing a wrongful civil action."); **Electronic Laboratory Supply Co. v. Cullen**, 712 A.2d 304, 309 (Pa. Super. 1998) ("[A]n attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Dragonetti Act.") (citations omitted); **Gentzler v. Atlee**, 660 A.2d 1378, 1386 (Pa. Super. 1995) ("We need not endorse the protection of lawyers and litigants who intentionally cast their lawsuit net too wide, perhaps in the

*(Footnote Continued Next Page)*

Thus, based on the foregoing, we hold that judicial privilege does not apply to Appellants' claims for wrongful use of civil proceedings and abuse of process. Because the trial court sustained Appellees' preliminary objections in the nature of a demurrer on the sole basis of judicial privilege, we vacate the trial court's order and remand this case for the trial court to consider and dispose of the remaining arguments in Appellees' preliminary objections.[14]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/23/2017

*(Footnote Continued)* ————————

hope of encouraging settlements in baseless lawsuits against defendants who do not belong in the case.").

[13] ***See, e.g., Mi-Lor, Inc. v. DiPentino***, 654 A.2d 1156, 1158 (Pa. Super. 1995) ("We observe, however, that an action for the wrongful use of a counterclaim demands that courts examine such claims closely, lest a defendant be punished for nothing more than defending himself or herself against a claim made by another."); ***Meiksin v. Howard Hanna Co., Inc.***, 590 A.2d 1303, 1305 (Pa. Super. 1991) ("If probable cause is shown to have existed, an absolute defense is established against an action for malicious prosecution, even when express malice is proved.") (citation omitted).

[14] Because we determine that judicial privilege does not apply, we need not consider the second issue raised by Appellants in their brief.