J-S59032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| YIP YAN WONG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BOBBY KAI TONG LI AND | : | No. 3645 EDA 2017 |
| CATHERINE P.Y. SIU, ESQUIRE | : | |

Appeal from the Judgment Entered December 11, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  September Term, 2015, No. 03375

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 31, 2019**

Yip Yan Wong appeals from the judgment entered on December 11, 2017, in the Court of Common Pleas of Philadelphia County following the denial of Wong's motion to remove a directed verdict.[1]  The motion for directed verdict had been granted by the trial court, dismissing all claims, on June 15, 2017.[2]  In this timely appeal, Wong argues the trial court erred in granting

_____

[1] Wong filed a notice of appeal on October 26, 2017, after the trial court entered the order denying his motion to remove the directed verdict on October 18, 2017.  Judgment was subsequently entered following a praecipe by Wong on December 11, 2017.  Pursuant to Pennsylvania Rule of Appellate Procedure 905(A)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."  Accordingly, we will consider the notice of appeal to have been filed after the entry of judgment.

[2] Upon the grant of the directed verdict, the trial court also granted motions *in limine* filed by Li and Siu, dismissing all other claims raised by Wong in her

the directed verdict on the claim of abuse of process she had levied against her ex-husband, Bobby Kai Tong Li (Li), and his lawyer, Catherine P.Y. Siu, Esquire (Siu). Additionally, she claims the trial court erred in finding the claims against Attorney Siu were barred by the doctrine of judicial immunity. After an independent review of the submissions by the parties, the relevant law, and the certified record, we conclude the trial court thoroughly addressed and properly disposed of Wong's issues on appeal, and, accordingly, affirm on the court's well-reasoned bases. *See* Trial Court Opinion, 5/23/2018.

Our standard of review on appeal from the grant of a directed verdict is as follows:

> In reviewing the trial court's entry of a motion for a directed verdict, "our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case." *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa. Super. 2000). "A directed verdict may be granted only where the facts are clear and there is no room for doubt." *Id.* (quoting *Lear, Inc. v. Eddy*, 749 A.2d 971, 973 (Pa. Super. 2000)). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Id.*

*Berg v. Nationwide Mut. Ins. Co., Inc.*, 44 A.3d 1164, 1170 (Pa. Super. 2012).

---

complaint. *See* Trial Court Opinion, 5/23/2018, at 16-19. Wong appeals only the dismissal of the abuse of process claims. *See* Order, 6/15/2017, docketed 6/22/2017.

While the trial judge has authored a comprehensive opinion supporting her decision to grant the directed verdict in favor of the defendants, we note that following our review of the certified record, the underlying lawsuit and the instant appeal appear to be a continuation of acrimonious divorce action between Wong and Li. Much of the litigation involved in that divorce centered on the equitable distribution of property in which Wong delivered to Li the deeds to various real estate holdings that were subject to mortgages taken by Wong and some of which had been foreclosed upon.

Our review of the certified record leads us to further conclude that the trial court was absolutely correct in determining that Wong had presented no evidence of legally abusive behavior on the part of either Siu or Li, and that all of Siu's actions in the underlying divorce matter had been taken for legally justifiable reasons, thereby rendering those actions immune from tort claims.

Not only did the trial court correctly determine Wong had produced no evidence to support her claim, we believe, through our review of the certified record, this underlying lawsuit bordered upon the spurious.

Judgment affirmed. Parties are directed to attach a copy of the May 23, 2018 trial court opinion in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/19

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION**

YIP YAN WONG

      v.

BOBBY KAI TUNG LI and
CATHERINE SIU, ESQUIRE

      :
      :
      :
      :
      :
      :

**SUPERIOR COURT
3645 EDA 2017**

**COURT OF COMMON PLEAS
CASE NO. 150903375**

**OPINION**

CARPENTER, J.                                MAY 23, 2018

This matter is on appeal from the October 18, 2017 denial of Plaintiff Yip Yan Wong's Motion to Remove Directed Verdict and the December 28, 2016 denial of Plaintiff's discovery request. For the reasons that follow, this Court requests that the Superior Court affirm the respective Orders.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Yip Yan Wong, the ex-wife in a protracted and contentious divorce, filed the instant "abuse of process" action against her ex-husband, Bobby Kai Tung Li ("Defendant Li"), and her ex-husband's attorney, Catherine Siu, Esquire, ("Defendant Siu" or "Attorney Siu"), claiming that certain pleadings and filings in the equitable distribution process were used such that Defendant Li obtained a "double windfall" to Plaintiff's harm.[1] The acrimonious nature of the divorce proceedings appears to have stemmed from the valuation and distribution of the parties' numerous properties in the

---

[1] Count 1 of Plaintiff's Complaint at paragraphs 92-110.

Wong Vs Li Etal-OPFLD



15090337500154

City of Philadelphia, which were intertwined with various LLC ownership interests, bankruptcy filings, and mortgage foreclosure proceedings. Also involved in this morass was Plaintiff's first ex-husband, who also appears to have had some financial interest in the properties at issue, and, most relevantly, appears to have financed some of the instant legal proceedings, as discussed further below. This tangled web of parties, assets, and liabilities led to the scheduling of numerous hearings and the entry of two equitable distribution Orders over an eight year span of divorce proceedings.

Because the bulk of the instant trial centered on the divorce proceedings between Plaintiff and Defendant Li, and Attorney Siu's related representation of Defendant Li, this Court has summarized the relevant information here. Plaintiff and Defendant Li were legally married from July 2004 through November 2006 after which the parties separated and Plaintiff filed for divorce in January 2007. On February 5, 2013, the Hon. Doris Pechkurow from the Philadelphia Court of Common Pleas, Family Division, ("the Family Court") entered an equitable distribution Order in the divorce action between Plaintiff and Defendant Li in which the Family Court ordered, among other things, that a property on the 1600 block of Fairmount Avenue in Philadelphia ("the Fairmount property") be transferred to Defendant Li. The Family Court ordered that Attorney Siu prepare the deed reflecting the transfer. Following receipt of the Order and effectuation of the transfer, Attorney Siu first learned about mortgages on the Fairmount property, one of which was in arrears and the property was on the verge of being foreclosed.[2] Attorney Siu sought reconsideration of the February 5, 2013 Order

---

[2] N.T. 6/12/17 at 198-200. The Yuk Yat Corporation mortgage was addressed in the February 5, 2013 Order. The HSBC mortgage was discovered after the recording of the deed because such recording

because the newly discovered mortgages had essentially cashed out the value of the property, which would have made Defendant Li's distribution valueless.[3] On March 4, 2013, the Family Court vacated the February 5, 2013 Order, but did not order that the deed to the property be transferred, nor that counsel prepare a deed, nor did the Order address the party who would be responsible for the fees of any transfer.[4] A trustee for the Family Court contacted Attorney Siu and told her to expect a prepared deed for the transfer to arrive at her office, but she never received anything.[5] Apparently, Plaintiff's divorce attorney never prepared a deed for the Fairmount property and a revised deed did not get drawn up. A final equitable distribution Order was entered on August 13, 2013 after a series of re-scheduled hearings because Plaintiff had failed to appear. The Family Court awarded Plaintiff ownership of properties (including the Fairmount property) and Defendant Li was awarded a cash sum.[6] Again, the Order was silent on the preparation of the deed and it does not appear that anyone did anything on Plaintiff's behalf, formally or informally, to draw up a deed or to formally transfer the deed of the Fairmount property.

In March 2015, Plaintiff's new (and current) counsel filed a Petition for Special Relief asking the Family Court to compel the Fairmont property back to Plaintiff.[7] As required by the Rules of Civil Procedure, Attorney Siu filed an Answer to the Petition,

---

interfered with the foreclosure by HSBC. The delinquency letter dated February 25, 2013 (approximately 3 weeks after Judge Pechkurow's Order) indicated delinquency in the amount of $41,674.

[3] N.T. 6/13/17 at 88-89; 263-66.

[4] N.T. 6/13/17 at 94.

[5] N.T. 6/13/17 at 105.

[6] N.T. 6/13/17 at 270.

[7] N.T. 6/13/17 at 110. The petition was filed approximately one month after Defendant Li received the cash sum, as awarded in the August 13, 2013 Order, out of the bankruptcy proceeding. N.T. 6/13/17 at 244.

admitting and denying the facts set forth in Plaintiff's petition, pursuant to Pa.R.C.P 206.2. On June 1, 2015, after a hearing, the Family Court issued an Order requiring Defendant Li to execute, but not draw up, the deed transferring ownership of the Fairmount property to Plaintiff within 5 days of being served with the same.[8] Plaintiff's counsel prepared the deed, sent it to Attorney Siu, and Defendant Li signed it. This deed transfer was all done in compliance with the Family Court Order.

On October 1, 2015, Plaintiff filed the instant action and the matter was assigned to this Court for jury selection on June 9, 2017, as to Attorney Siu only.[9] Without any citation to a Court Order, a rule of Court, or a rule of law, Plaintiff asserted at trial that Attorney Siu should have drawn up the deed prior to the June 2015 Family Court Order and that she and Defendant Li had used the equitable distribution process to Plaintiff's harm, discussed more fully below. On June 15, 2017, following three days of testimony and oral argument, this Court entered a Directed Verdict in favor of Defendant Siu and against Plaintiff. On June 26, 2017, Plaintiff filed a timely post-trial Motion to Remove Directed Verdict requesting that this Court strike the directed verdict and order a new trial. On October 18, 2017, this Court denied the motion.[10] On October 26, 2017, Plaintiff filed a Notice of Appeal to the Superior Court and on November 1, 2017, Plaintiff was served an Order directing her to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 16, 2017,

---

[8] N.T. 6/13/17 at 138.

[9] On November 23, 2015, Plaintiff filed a Praecipe to Enter Default Judgment against Defendant Li and the remainder of the instant proceedings solely involved Attorney Siu.

[10] On July 27, 2017, Plaintiff filed a Notice of Appeal to the Superior Court; however the Superior Court issued a Rule to Show Cause Order because the post-trial motion was still pending before this Court. Accordingly, Plaintiff discontinued the premature appeal at docket 2540 EDA 2017.

4

Plaintiff filed a timely statement of matters complained of on appeal raising the following issues:

1. The Court committed an error of law when it granted defendant Catherine P.Y. Siu's Motion for a Directed Verdict as to Plaintiff's claim for abuse of process. "[A] directed verdict should not be granted where there are factual questions to be submitted to the jury. If there is any conflict in the evidence, particularly when the evidence consists of oral testimony, if different inferences may reasonably be drawn from the evidence, or if the court would be called upon to pass upon the credibility of witnesses or of their testimony, the case is not a proper one for a directed verdict." *Rogers v. Johnson & Johnson Prods., Inc.*, 565 A.2d 751, 755 (Pa. 1989). The evidence presented at trial, focusing on Defendant Siu's own testimony, definitively established the first prong—that processes were employed by Defendant Siu; to wit, filing the motion for additional attorneys' fees before the Family Court; the filing of the second proof of claim before the Bankruptcy Court; appealing the denial of the motion for additional attorneys' fees; filing an opposition to the objection to the second proof of claim; and filing a bad faith opposition to Plaintiff's Petition for Special Relief seeking to recover the Fairmount Property. The evidence presented, when viewed in the light most favorable to the Plaintiff, and ignoring any adverse testimony as required by controlling law, and particularly given the tone and tenor of Siu's own testimony, strongly indicates that a reasonably jury certainly could conclude that in undertaking the above described processes, Defendant Siu was primarily motivated by improper purpose as to Plaintiff, including, but not limited to, the increase of Plaintiff's attorneys' fees and costs. Thus, Plaintiff proved a case of abuse of process sufficient to defeat a Directed Verdict. Thus, in granting a directed verdict, respectfully, the Court committed reversible error.

2. The Court committed an error of law in concluding that Plaintiff's claims were barred in any respect by the Doctrine of Judicial Immunity. The Superior Court's decision in *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526 (Pa. Super. 2017) is dispositive of this issue and requires the removal of the directed verdict on this basis.

3. The Court committed an error of law when, by and through its December 28, 2016 Order, it denied Plaintiff's Motion to Strike Objections and Compel Supplemental Discovery Responses.

## DISCUSSION

### *Entry of a Directed Verdict in favor of Defendant Siu and against Plaintiff as to Plaintiff's claims for abuse of process*

A court's entry of directed verdict shall be made "only where the facts are clear and there is no room for doubt."[11] In assessing a motion for directed verdict, the court "must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony."[12] A reviewing court will reverse a court's grant of directed verdict only upon a finding that the court "abused its discretion or committed an error of law that controlled the outcome of the case."[13]

With regard to a claim for the common law tort of abuse of process, the plaintiff bears the burden of showing that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.[14] As stated by our Superior Court, "[t]he gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure."[15] Courts have broadly interpreted the term "process" such that it "encompasses the entire range of procedures incident to the litigation process."[16] However, our Superior Court has highlighted the significance of the term "primarily" to clarify that "there is no action for abuse of process when the process is used for the purpose for which it is intended,

---

[11] *Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa. Super. 2000).
[12] *Id.*
[13] *Id.*
[14] *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993).
[15] *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998).
[16] *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993) (citing *Nienstedt v. Wetzel*, 651 P.2d 876, 880 (Ariz. 1982)).

6

but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant..."[17] Stated differently,

> [a] cause of action for abuse of process requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ... [;] *there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.*[18]

At the instant trial, Plaintiff proceeded only as to her claim for abuse of process at Count I of the Complaint, with its assertion that defendants had used the equitable distribution process to Plaintiff's harm.[19] Plaintiff contends that there was sufficient evidence to send this case to the jury, asserting that Attorney Siu abused legal process by 1) filing the Motion for Attorneys' Fees before the Family Court and appealing the denial of said motion; 2) filing the second Proof of Claim before the Bankruptcy Court and filing an opposition to Plaintiff's objection thereto; and 3) filing an Answer to Plaintiff's Petition for Special Relief.

As a matter of law, Plaintiff was unable to show that any of these filings were improper or unauthorized by the relevant rules of procedure governing the filings. Plaintiff offered no proof through an expert, case law from this Commonwealth, or citation to the Bankruptcy Code, the Pennsylvania Rules of Civil Procedure, or the Rules of Professional Responsibility that the at-issue filings were not proper. Additionally, Plaintiff offered no evidence that a Bankruptcy Court judge or a Family Court judge found that these filings were legally frivolous or unwarranted under the law. Plaintiff simply never

---

[17] *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192-93 (Pa. Super. 1993) (citing Restatement (Second) of Torts, § 682, comment b).

[18] *Hart v. O'Malley*, 647 A.2d 542, 552 (Pa. Super. 1994).

[19] Count II was a claim for Intentional Interference with Contractual Relations; Count III was a claim for Fraud; Count IV was a claim for Fraud by Agent against Defendant Li only; Count V was a claim for Aiding and Abetting Fraud; and Count VI was a claim for Unjust Enrichment against Defendant Li only.

7

presented any evidence to guide the jury as to the proper purpose of these various filings under the law. Instead, all evidence and testimony indicated that Attorney Siu complied with all Family Court Orders, Rules of Civil Procedure, and Rules of Professional Responsibility. Accordingly, at the close of evidence, this Court determined that Attorney Siu had not committed any articulable violation of any Rule, Code, or statute and this Court properly entered a directed verdict on these claims.

Moreover, even if some improper use of process could somehow have been inferred to warrant sending the case to the jury, Plaintiff presented no coherent testimony as to how she was *harmed* by any of the at-issue actions. Rather than present any evidence in support of any prong of the abuse of process claim, the trial was a meandering presentation of confused and contradictory testimony which seemed a continuation of the eight year divorce battle and an inability to accept the Family Court's equitable distribution.

Plaintiff claims that she suffered harm because from 2013-2015 Attorney Siu did not *sua sponte* draft a deed transferring the Fairmount property back to Plaintiff, despite the fact that Family Court had not ordered Attorney Siu to do so and despite the fact that Plaintiff could not show that her own lawyer ever drafted such deed, or made such request of Attorney Siu. Plaintiff attempted to establish that her prior attorneys had requested the deed from Attorney Siu; however, Plaintiff's testimony was extremely scattered as to where/how/when such request was made, such that her testimony amounted to sheer speculation and could not support a finding that anyone had asked for Attorney Siu to

8

transfer the at-issue deed before March 2015.[20] Further, the at- issue mortgage on the Fairmount property *was already in default* in the amount of $41,674 and on the verge of foreclosure before it was even transferred to Defendant Li.[21] Plaintiff's testimony was so convoluted that it is impossible to determine whether/when she was living in the property during the at-issue period or whether/when she had been collecting rent and/or whether she was attempting to sell the property. Plaintiff could show no negative rulings in the foreclosure matter, no loss of rent in the Fairmount property or other real estate, no increased or unpaid tax bills, nor other harm associated with the deed not being formally conveyed until June 2015.

In addition to Plaintiff's failure to demonstrate any evidence of harm resulting from the deed transfer issue regarding the Fairmount property, Plaintiff also failed to show any harm related to the incursion of legal fees. The below excerpt illustrates the lack of evidentiary proof with regard to any claim of harm by Plaintiff resulting from the costs of her legal representation:

*[Direct examination]*

Q. [Ms. Wong], do you recognize Exhibit 31 as part of legal invoices from my law firm to either you or to Humer?
A. Yes.
Q. Do you see that portions of the invoices are missing? Blank spots?

---

[20] N.T. 6/14/17 at 49-69 (providing direct examination questions from counsel as well as *in camera* questioning by the Court on the issue of whether the purported letter existed and could be retrieved). Plaintiff's testimony bore that her knowledge of a request to Attorney Siu was based upon a purported letter from an unnamed prior attorney. N.T. 6/14/17 at 70:7-16. Neither Plaintiff, Plaintiff's counsel, nor Attorney Siu had the purported letter. Plaintiff testified that the letter was at her home and after this Court asked her to retrieve it, the *in camera* examination by counsel and this Court became a tortured exercise in trying to establish Plaintiff's address so that she could retrieve the letter, wherein Plaintiff became inexplicably evasive. N.T. 6/14/17 at 70-92. Plaintiff was seen texting on her cell phone at a break in her *in camera* testimony, which this Court had to address with Plaintiff and counsel. N.T. 6/14/17 at 74-76. Upon determining where Plaintiff was staying, Plaintiff then testified that the document was in boxes kept at yet another address and could not be located. N.T. 6/14/17 at 79-81. The clear import of the testimony was that **even when offered a break in the proceedings to get the letter, Plaintiff refused.**
[21] The delinquency letter dated February 25, 2013 (approximately 3 weeks after Judge Pechkurow's Order) indicated delinquency in the amount of $41,674.

9

**A.** I don't understand the -- the English word.

**Q.** Okay. That's not what I asked, but – Ms. Wong], do you know how much money you spent in legal fees with respect to the following issues? Listen carefully. The HSBC loan on Fairmount Avenue; the Conestoga Bank confession of judgment on the Tioga properties; the motion for special relief before the Family Court to compel the return of 1637 Fairmount Avenue; the motion to strike the second proof of claim in the bankruptcy court; all of the briefs opposing Ms. Siu's attempt to get additional attorneys fees; all of the appeal work related to those issues; and all of the matters relating to the failure to -- of you to get back the Tioga Street properties at all.

**A.** How much I paid?

**Q.** Approximately how much you paid in total in legal fees for those issues. How much that you paid or Humer paid on your behalf.

**A.** Yeah. A total about 140,000.

**Q.** $140,000?

**A.** Yes. Almost. Almost.

**Q.** And were some of those fees paid by Humer with respect to the things that happened within the bankruptcy?

**A.** Yes.

**Q.** Was that about $20,000 of that total sum?

**MR. BOMSTEIN:** Objection. Leading.

**THE COURT:** Umm, I'm going to overrule it for this one question. Just be careful on the --

**BY MR. ROSENZWEIG:**

**Q.** If you know.

**A.** Yes.

**Q.** Approximately?

**A.** Yes.

**Q.** And are those legal fees part of your claim for damages against Ms. Siu?

**A.** Yes.

**Q.** Okay. And for clarity, those legal fees are not the fees related to this lawsuit against Ms. Siu.

**A.** Yes.[22]

*[Cross-examination]*

**MR. BOMSTEIN:** Let's talk about those bills that your attorney was just asking you about. Do you see on the first page it says that the bill was submitted to Woon Tin Wong?

**A.** Yes.

**Q.** Do you see that it says it's care of Humer, LLC at 2510 South 2nd Street? Do you see that?

---

[22] N.T. 6/14/2017 at 144:21-25; 145:1-25, 146:1-21.

**MR. ROSENZWEIG:** Your Honor, note my objection. He's only talking about the first page. Correct?

**MR. BOMSTEIN:** Well, that was so far. Let's look at the second page.

**THE COURT:** All right.

**BY MR. BOMSTEIN:**

**Q.** Do you see on the second page it says "Woon Tin Wong"?

**A.** Yes.

**Q.** Do you see on the third page it also says, "to Mr. Wong at Humer, LLC"?

**A.** Yes.

**Q.** Can you find a page in here where your name appears on the bill?

**A.** No.

**MR. ROSENZWEIG:** She has to keep looking.

**MR. BOMSTEIN:** Excuse me. Counsel shouldn't be gesturing towards his client.

**THE PLAINTIFF:** Yes.

**BY MR. BOMSTEIN:**

**Q.** Okay. So for our sake, how far in did you have to go before you found a bill that was in your name in the name of Yip Yan Wong?

**THE INTERPRETER:** Let me look for that page.

**THE PLAINTIFF:** Let me count how many page.

**BY MR. BOMSTEIN:**

**Q.** May I make it easier for you? Can you look by date?

**A.** June.

**Q.** June of what year?

**A.** 2015.

**Q.** Would you please read me the first date so I can find that for myself?

**THE INTERPRETER:** She want me to pronounce the "June" for her.

**BY MR. BOMSTEIN:**

**Q.** Please read me the first one or two items and identify the dates.

**A.** The first two assignments. Yeah. Name. Could you tell me the, in Chinese, the which page, the page number.

**Q.** I'm asking a different question. I apologize. What I'm trying to find out is this. If you look at an invoice here, there is a list -- there is a date at the top, and then there's a series of dates below that.

**A.** Yes.

**Q.** Please give me a date.

**A.** You are talking about the particular page?

**Q.** Please identify a date that appears at the top left.

**A.** I don't know how to pronounce the English words.

**Q.** Well, all right. I would ask that the interpreter pronounce it.

**THE INTERPRETER:** June 1st.

**BY MR. BOMSTEIN:**

**Q.** June 1st, 2015.

**A.** Yes.

**Q.** And what is the first date that's entered on the left for services?

**A.** May the 1st, 2015.

**Q.** To make sure we're looking at the same page, does that say, "5/1/15 PSR, Litigation, Review appellate brief of Li"? Is that the page we're looking at?

**A.** Yes.

**Q.** So can we agree that all the pages before that page did not have your name on it?

**A.** Yes.

**Q.** You mentioned that you thought you spent about 140,000. Do you recall that?

**A.** Yes.

**Q.** How did you come up with that number? Pardon?

**A.** My -- my attorney calculate for me.

**Q.** He did. So you did not check it yourself.

**A.** No.

**Q.** Can we agree that the payment for these bills came out of the Humer account, the bank account for Humer?

**A.** No.

**Q.** No? Did you bring with you to court --

**MR. BOMSTEIN:** Did she say something else?

**THE PLAINTIFF:** There is a pop. There's a pop. Some of the money I paid from china.

**Q.** I'm going to ask this question. Please listen carefully. Before you came to court today, did you look at the bills that just had the name or that had the name "Yip Yan Wong"? Did you look at those bills?

**A.** Yes.

**Q.** Regarding those bills, how much is the total for those services?

**A.** A hundred thousand something. The bill I received was a hundred more than a hundred thousand something.

**Q.** I'm going to re-ask the question. For the bills that have your name on it, did you --

**A.** I didn't calculate how much total, but I know for the -- for the Fairmount, the Tioga, and the -- those property and my divorce, I know how much total.

**Q.** Did you sit down with a calculator and determine how much the bills were for the ones that had your name on it? That's a yes-or-no question. Did you do that?

**A.** No.

**Q.** You did not do that.

**A.** No.

**Q.** And do you see in the second half of the packet that a lot of pages have no information on them?

**A.** Yes.

**MR. BOMSTEIN:** I have no further questions on this exhibit.[23]

---

[23] N.T. 6/14/2017 at 147:18-25; 148:1-25; 149:1-25; 150:1-25; 151:1-25; 152:1-25.

Plaintiff's own testimony failed to establish the amount of fees expended in the various areas of litigation, such that this Court was left with no definite aggregate amount nor any amounts specific to the litigation of the Motion for Attorneys' Fees (and appeal of the denial thereof) before the Family Court or the second Proof of Claim (and opposition to Plaintiff's objection thereto) before the Bankruptcy Court that had been filed by Defendant Siu. Plaintiff further failed to establish that she was the person actually responsible for making the payment for the legal services. The invoices from Plaintiff's counsel, that were provided to Plaintiff to aid her in her testimony but never admitted into evidence, were also submitted to "Humer LLC" and "Mr. Woon Tin Wong" (Plaintiff's first ex-husband) and provided no indication that Plaintiff herself was making the payments. Plaintiff provided no additional statements, receipts, or other documentation to show that she was the person making the payments. Accordingly, this Court could not find that Plaintiff had satisfied her burden of showing the requisite harm resulting from the claimed abuse of process.

Finally, Plaintiff also failed to show harm from any other aspect of Attorney Siu's legal representation of Defendant Li in the divorce and equitable distribution proceedings. Indeed, the protracted nature of the divorce proceedings appear to be a product of the vast number of interlocking financial liabilities due to foreclosure and bankruptcy of the limited liability corporations that Plaintiff and her first ex-husband created.

***Plaintiff's claims barred by the doctrine of judicial immunity***

Our Superior Court has long held that the doctrine of judicial immunity affords an absolute privilege to an attorney in representation of a client in judicial proceedings and "bars actions for tortious behavior by an attorney [. . .] so long as it was a communication pertinent to any stage of a judicial proceeding."[24] The Court clarified that "[t]he key is whether the pertinent communication was undertaken in connection with representation of a client in a judicial proceeding."[25] In further developing the scope of the doctrine, the Court stated that "the privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest."[26] Moreover, the Court acknowledged that "[c]ourts have continually protected a variety of communications made at various proceedings as well as statements with only minor relation to the underlying case."[27]

In the instant matter, Plaintiff avers that the Superior Court's decision in *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526 (Pa. Super. 2017) is dispositive of this issue and requires the removal of the directed verdict. This Court has found Plaintiff's reliance on *Feierstein* wholly unpersuasive, as that matter involved the sustaining of Preliminary Objections, which is procedurally distinct from the entry of a directed verdict. Moreover, the *Feirestein* Court's discussion of the policy considerations underlying the doctrine of judicial privilege finds no application in the

---

[24] *Brown v. Delaware Valley Transplant Program*, 539 A.2d 1372, 1374 (Pa. Super. 1988). *See also Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530–31 (Pa. Super. 2017).
[25] *Brown v. Delaware Valley Transplant Program*, 539 A.2d 1372, 1375 (Pa. Super. 1988).
[26] *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530 (Pa. Super. 2017) (citing *Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. 2012)).
[27] *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 530-31 (Pa. Super. 2017) (citing *Richmond v. McHale*, 35 A.3d 779, 786 (Pa. Super. 2012)).

14

instant matter. The *Feierstein* Court stated that the policy underpinning the doctrine was

> to leave reasonably unobstructed the paths which lead to the ascertainment of truth and to encourage witnesses with knowledge of facts relevant to judicial proceedings to give complete and unintimidated testimony. However, individuals who bring lawsuits with malicious motive and lacking probable cause, or that use the legal process for an illegitimate end after a suit has been initiated, are not seeking the ascertainment of truth or to encourage candor from witnesses.[28]

Whether Plaintiff was even on a path for the ascertainment of truth in the instant matter was questionable at best, as Plaintiff's own direct case at trial created an extremely obstructed path to the truth.

This Court's analysis in granting the directed verdict on Plaintiff's claims for abuse of process was primarily focused on Plaintiff's failure to establish the requisite elements of an abuse of process claim, as a matter of law. In particular, Plaintiff could not request that the jury find that Attorney Siu acted in a manner *not authorized* by the at-issue process, without first providing the jury with some guidance as to what *was authorized* by said process, whether it be a request for attorneys' fees or the making of a responsive filing. Plaintiff utterly failed to present any information at trial that would allow a jury to infer that Attorney Siu acted outside the scope of what was authorized in the proceedings in Family Court or in the Bankruptcy Court. The judicial immunity considerations became intertwined in the parties' arguments concerning whether the processes used by Attorney Siu were used primarily to accomplish a purpose for which the processes were not designed. This Court found, as discussed at length above, that the evidence presented at trial did not support the claims that Attorney Siu was primarily

---

[28] *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 534–35 (Pa. Super. 2017).

15

motivated by improper purpose in filing the Motion for Attorneys' Fees before the Family Court and appealing the denial of said motion, filing the second Proof of Claim before the Bankruptcy Court and filing an opposition to Plaintiff's objection thereto, and filing an Answer to Plaintiff's Petition for Special Relief. Further, the evidence failed to establish that Attorney Siu acted outside of her obligations and responsibilities as a lawyer in the representation of Defendant Li, as she complied with all Orders from the court and all professional obligations. As such, this Court properly entered a directed verdict on this claim.

### *Denial of Plaintiff's discovery request to strike Defendant Siu's objections and further compel supplemental discovery responses*

The instant claim on appeal involves pre-trial discovery proceedings, for which the following procedural history is relevant: On November 20, 2016, defense counsel for Attorney Siu filed a discovery request to compel production of documents, which was granted by the Hon. John Younge on December 7, 2016. On December 2, 2016, Plaintiff filed a litany of discovery requests and a Motion for Extraordinary Relief to extend discovery deadlines. On December 21, 2016, Judge Younge denied Plaintiff's Motion for Extraordinary Relief.[29] On December 28, 2016, the Hon. Shelly Robins-New granted Plaintiff's request to compel Defendant Siu's deposition and Defendant Siu's response to production request. Judge Robins-New also denied Plaintiff's request to determine the sufficiency of Defendant Siu's objections and Plaintiff's request to strike Defendant Siu's objections to requests and compel supplemental responses. On January 27, 2017, Plaintiff filed a Motion to Reconsider the denial of the discovery request, to which

---

[29] Order docketed December 30, 2016.

Defendant Siu filed her opposition, and Judge Robins-New denied the motion on February 22, 2017. On February 13, 2017, Defendant Siu filed a Motion for Summary Judgment, to which Plaintiff filed her opposition on March 16, 2017 and Defendant Siu filed her Reply on March 21, 2017. On May 18, 2017, the Hon. Rosalyn Robinson denied the Motion for Summary Judgment without opinion.

Plaintiff avers that the Court committed an error of law when, by and through its December 28, 2016 Order, it denied Plaintiff's Motion to Strike Objections and Compel Supplemental Discovery Responses. This Court did not enter the at-issue Order; however, upon conducting an independent review of the limited record, this Court submits that the discovery Order was proper. This Court notes that the record does not include the transcript of the discovery hearing before Judge Robins-New, as it was never requested by Plaintiff.

Our Superior Court has held that the standard of review on appeal from a discovery order is whether the trial court committed an abuse of discretion.[30] The Court acknowledged, however, that "to the extent that [the Court is] faced with questions of law, [the] scope of review is plenary."[31] In examining the role of the trial court in discovery proceedings, the Court stated that the trial court is responsible for "[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure."[32] Pennsylvania Rule of Civil Procedure 4009.12

---

[30] *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa. Super. 2010).
[31] *Id.*
[32] *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1233 (Pa. Super. 2004) (quoting *Hutchison v. Luddy*, 606 A.2d 905, 908 (Pa. Super. 1992).

17

governs a party's answer to a request for production of documents. The Rule provides the following:

(a) The party upon whom the request is served shall within thirty days after the service of the request
>(1) serve an answer including objections to each numbered paragraph in the request, and
>(2) produce or make available to the party submitting the request those documents and things described in the request to which there is no objection.
>>(i) Where the documents may be identified only after review of a larger group of documents, and the burden of identifying the documents would be substantially the same for the party serving the request as for the party served, the party served may afford the party serving the request reasonable opportunity to identify the documents, to examine or inspect them and to obtain copies.

(b) The answer shall be in the form of a paragraph-by-paragraph response which shall
>(1) identify all documents or things produced or made available;
>(2) identify all documents or things not produced or made available because of the objection that they are not within the scope of permissible discovery under Rule 4003.2 through Rule 4003.6 inclusive and Rule 4011(c). Documents or things not produced shall be identified with reasonable particularity together with the basis for non-production;
>(3) specify a larger group of documents or things from which the documents or things to be produced or made available may be identified as provided by subdivision (a)(2)(i);
>(4) object to the request on the grounds set forth in Rule 4011(a), (b), and (e) or on the ground that the request does not meet the requirements of Rule 4009.11;
>(5) state that after reasonable investigation, it has been determined that there are no documents responsive to the request.

(c) The answer shall be signed and verified by the party making it and signed also by the attorney making an objection if one is set forth.

(d) If a request is reasonably susceptible to one construction under which documents sought to be produced are within the scope of the request and another construction under which the documents are outside the scope of the request, the answering party shall either produce the documents or identify with reasonable particularity the documents not produced together with the basis for non-production.[33]

---

[33] Pa.R.C.P. 4009.12.

The limited record available to this Court includes Plaintiff's Request for production of documents, Defendant Siu's Answer to the document requests, and the additional Orders of Judge Robins-New, also issued on December 28, 2016. One of the additional Orders granted Plaintiff's request to compel Defendant Siu's deposition and Defendant Siu's response to production request. The other additional Order denied Plaintiff's request to determine the sufficiency of Defendant Siu's objections. Upon review of this limited record, this Court submits that the Motion to Strike Objections and Compel Supplemental Discovery Responses was supported by the determinations made by Judge Robins-New in issuing the two additional Orders. Her Honor determined that Defendant Siu's objections were sufficient, and therefore denied the request to determine the sufficiency of such objections. Further, Her Honor compelled full and complete responses to the request for production of documents in conjunction with Defendant Siu's deposition. Accordingly, no proper basis remained for Her Honor to grant Plaintiff's Motion to Strike Objections and Compel Supplemental Discovery Responses.

## CONCLUSION

For the aforementioned reasons, this Court respectfully requests that the Superior Court affirm the December 28, 2016 denial of Plaintiff's discovery request and the October 18, 2017 denial of Plaintiff's Motion to Remove Directed Verdict.

BY THE COURT:

Carpenter, J.

19